

**U.S. Department of Transportation**
**Federal Highway Administration**

## Eastern Federal Lands Highway Division
## NEPA Categorical Exclusion Form

| | | |
|---|---|---|
| **Project Number:** | 15th Street Cycle Track Removal and road repaving | **Date:** 2/27/2026 |
| **Project Name:** | 15th Street Cycle Track Removal and road repaving | |
| **Location:** | National Park Service, National Mall and Memorial Parks<br>District of Columbia, DC | |
| **CE Category** | 23 CFR 771.117(c)(26): Modernization of a highway by resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes (including parking, weaving, turning, and climbing lanes), if the action meets the constraints in paragraph (e)[..] | |

See 23 CFR 771.117 for full description of CE categories, including additional requirements when applying (c)26-28.

---

## Project Description

The work consists of removing existing cycle-track and bicycle-related traffic control features and restoring the roadway to a conventional lane configuration within the existing curb lines along three segments—15th St NW / Raoul Wallenberg Pl SW (Constitution Ave NW to Maine Ave SW), Maine Ave SW (15th St NW to Ohio Dr SW/East Basin Dr SW—southbound), and Ohio Dr SW/East Basin Dr SW (Maine Ave SW to the Jefferson Memorial Food Kiosk—southbound)—including removal of cycle track barriers/delineator posts and anchor bolts with restoration of resulting voids; milling and overlaying asphalt within curb faces to a maximum treatment depth of ≤ 4 inches; grinding/removing existing pavement markings within concrete bus laybys; removing bicycle signal faces and retiming/rephasing traffic signals as needed; removing bicycle route signage and installing new signage (and striping transitions) at the north and south project limits to safely transition bicyclists; and restriping the corridor to a typical cross-section of two northbound lanes and two southbound lanes (plus turn lanes where feasible), with crosswalk markings replaced in-kind on asphalt and new stop bars and lane-use arrows installed at intersection approaches as warranted.

This project supports implementation of Executive Order 14252, "Making the District of Columbia Safe and Beautiful" by advancing coordinated stewardship and improved visual quality of prominent federal public spaces through removal of roadway appurtenances and

FHWA-AR_001



Eastern Federal Lands Highway Division
NEPA Categorical Exclusion Form

restoration of a standardized, maintainable corridor configuration within the existing roadway prism.

With the upcoming National Cherry Blossom Festival and preparations underway for Americas 250th anniversary, ensuring safe access for residents, commuters, visitors, and emergency services is a shared priority. These nationally significant events draw substantial visitation and require coordinated infrastructure planning to support mobility, security, and a positive experience for all.

**Environmental Commitments and Mitigation Measures**
N/A

**Summary of Section 7 of the Endangered Species Act Compliance**
Because effects are limited to temporary construction disturbances (noise, equipment presence, localized dust) within an already developed roadway, the action is not anticipated to adversely affect listed/proposed species or designated critical habitat, and significant impacts are not expected. The FHWA Eastern Federal Lands relies on the National Park Service determination.

**Summary of Section 106 of the National Historic Preservation Act Compliance**
On February 20, 2026, the National Park Service Cultural Resource experts determined the proposed federal undertaking would have **no adverse effect to historic properties**.

**Additional Agency Coordination and Compliance**
The FHWA Eastern Federal Lands relies upon the existing Categorical Exclusion decision made by the National Park Service and concurs with the National Park Service Categorical Exclusion documentation dated February 23, 2026.

Page **2** of **6**
EFLHD NEPA Categorical Exclusion Form                                      EFL-TM-ENV-03(04)
15th Street Cycle Track Removal and road repaving

FHWA-AR_002



Eastern Federal Lands Highway Division
NEPA Categorical Exclusion Form

**Categorical Exclusion Recommendation:**

On the basis of the environmental impact information in the statutory compliance file, with which I am familiar, I believe the project should be categorically excluded from further NEPA analysis.

KEVIN S ROSE  Digitally signed by KEVIN S ROSE
Date: 2026.02.27 13:58:39 -05'00'

_____          _____
Kelly Stern                                                                              Date
Environmental Protection Specialist
Eastern Federal Lands Highway Division
Federal Highway Administration

**Categorical Exclusion Determination:**

On the basis of the environmental impact information in the statutory compliance file, with which I am familiar, I am categorically excluding the described project from further NEPA analysis.  The project meets the 23 CFR 771.117(a) definition of a categorical exclusion.  No unusual circumstances per 23 CFR 771.117(b) apply.

KEVIN S ROSE  Digitally signed by KEVIN S ROSE
Date: 2026.02.27 13:59:18 -05'00'

_____          _____
Kevin S. Rose                                                                         Date
Environmental Team Leader
Eastern Federal Lands Highway Division
Federal Highway Administration

FHWA-AR_003



Eastern Federal Lands Highway Division
NEPA Categorical Exclusion Form

**Appendix A: Environmental Checklist**

| |
|---|
| **Section 7 of the Endangered Species Act:** |
| • Are Federally-listed species potentially present in the study area?  ☒Yes, see Notes[i] ☐No<br>If Yes, effects determination:<br>☒No Effect ☐May Affect, Not Likely to Adversely Affect ☐May Affect, Likely to Adversely Affect |
| **Section 106 of the National Historic Preservation Act:** |
| • Are historic properties known to be present in the study area? ☒Yes     ☐No<br>If Yes, will they be impacted by the project? ☐Yes     ☒No<br>• Will previously undisturbed ground be disturbed?<br>☐Yes     ☒No<br>• Effects determination:<br>☐No Historic Properties Affected   ☒No Adverse Effect ☐Adverse Effect, MOA Executed<br>• Was tribal consultation completed? ☐Yes     ☒No |
| **Water and Wetlands:** |
| • Section 404 of the Clean Water Act<br>Are impacts to Waters of the US anticipated? ☐Yes     ☒No<br>If Yes, approval anticipated:<br>☐Nationwide Permit (NWP)  ☐Regional General Permit ☐Individual Permit<br>• Section 401 of the Clean Water Act<br>☐NWP certified by State   ☐Individual Certification<br>• Section 402 of the Clean Water Act (National Pollutant Discharge Elimination System)<br>Will the land disturbance threshold likely be exceeded to require a permit and SWPPP?<br>☐Yes     ☒ No<br>• Is post-construction stormwater management review/approval anticipated?  ☐Yes   ☒No<br>• ☒Project is consistent with Executive Order 11990, Protection of Wetlands |
| **Floodplains:** |
| • Is the project in a FEMA floodplain?<br>☒Yes    ☐No    ☐ Floodplain not mapped<br>• ☒ Project is consistent with Executive Order 11988, Floodplain Management |
| **Section 4(f) of the USDOT Act:** |
| • Does the project meet the Section 4(f) exemption for Federal lands transportation facilities under Section 1119(c)(2) of MAP-21, 23 U.S.C. 138(a)?     ☒Yes ☐No<br>• Is there a use of a Section 4(f) property in the study area? ☐Yes  ☒No<br>If Yes, De Minimis Finding:☐  Programmatic:☐    Individual 4(f): ☐ |

FHWA-AR_004



Eastern Federal Lands Highway Division
NEPA Categorical Exclusion Form

| |
|---|
| **Section 6(f) of the Land and Water Conservation Fund:** |
| • Was the property purchased with grant funds from the Land and Water Conservation Fund? ☐Yes  ☒No |
| • If Yes, was documentation of approval from National Park Service Director received for the conversion or replacement of 6(f) property? ☐Yes  ☐No |
| **Coastal Zone Management Act of 1972:** |
| • Is the project in a Coastal Zone? ☒Yes  ☐No |
| • If yes, will a Federal Consistency Review be completed? ☐Yes  ☒No |
| **Right of Way:** |
| • Is the project completely within the transportation facility's right-of-way?  ☒Yes  ☐No |
| • If no, will the project require relocations or easements? ☐Yes  ☐No |
| **Hazardous Waste and Materials:** |
| • Are hazardous materials or contamination exceeding regulatory thresholds (as set by U.S. EPA, County Environmental Health, etc.) present? ☐Yes  ☒No |
| • If Yes, is the nature and extent of the hazardous materials or contamination fully known? ☐Yes  ☐No, plan for securing information provided in Notes |
| **Section 7(a) of the Wild and Scenic Rivers Act:** |
| • Are there Wild and Scenic Rivers? ☐Yes  ☒No  ☐Eligible |
| If Yes, has review by the river-administering agency been completed? ☐Yes  ☐No |
| **Clean Air Act:** |
| • Is the project in a non-attainment area? ☒Yes  ☐No |
| If Yes, is the project on the Transportation Improvement Program(TIP)/State Implementation Plan(SIP)? ☐ Yes  ☒No |
| **Highway Traffic and Construction Noise Regulations:** |
| • ☐ The proposed project is a Type I project (highway on a new location, substantial horizontal or vertical alteration, new through or auxiliary lanes).  Noise analysis is required. |
| • ☐ The proposed project is a Type II project (retrofit for noise abatement). |
| • ☒ The proposed project is a Type III project (noise analysis not required). |
| • ☐ Does not apply. |
| **Farmland Protection Policy Act for Highway Projects:** |
| • Does the project displace, require acquisition of, or require an easement from farmland? ☐Yes  ☒No |
| **Does the project affect any other resources not listed above? Explain below and list anticipated permits:** |
| |
| |
| |
| |
| |

Page **5** of **6**
EFLHD NEPA Categorical Exclusion Form                                                    EFL-TM-ENV-03(04)
15th Street Cycle Track Removal and road repaving

FHWA-AR_005



Eastern Federal Lands Highway Division
NEPA Categorical Exclusion Form

---

[i] Federally-listed species per U.S. Fish and Wildlife Service's IPaC:  Northern Long-Eared Bat (Endangered), Tricolored Bat (Proposed Endangered), Monarch Butterfly (Proposed Threatened)

FHWA-AR_006



**National Park Service**
**U.S. Department of the Interior**

**National Mall and Memorial Parks**
**Date: 02/20/2026**

# ASSESSMENT OF ACTIONS HAVING AN EFFECT ON HISTORIC PROPERTIES

## A. DESCRIPTION OF UNDERTAKING

**1. Park:** National Mall and Memorial Parks

**2. Project Description:**

**Project Name:** 15th Street Cycle Track Removal and road repaving
**Prepared by:** Daniel Weldon    **Date Prepared:**    **Telephone:**
**PEPC Project Number:** 134934
**Locations:**

      **County, State:** District of Columbia, DC

**Describe project:**

The work consists of removing existing cycle-track and bicycle-related traffic control features and restoring the roadway to a conventional lane configuration within the existing curb lines along three segments—15th St NW / Raoul Wallenberg Pl SW (Constitution Ave NW to Maine Ave SW), Maine Ave SW (15th St NW to Ohio Dr SW/East Basin Dr SW—southbound), and Ohio Dr SW/East Basin Dr SW (Maine Ave SW to the Jefferson Memorial Food Kiosk—southbound)—including removal of cycle track barriers/delineator posts and anchor bolts with restoration of resulting voids; milling and overlaying asphalt within curb faces to a maximum treatment depth of ≤ 4 inches; grinding/removing existing pavement markings within concrete bus laybys; removing bicycle signal faces and retiming/rephasing traffic signals as needed; removing bicycle route signage and installing new signage (and striping transitions) at the north and south project limits to safely transition bicyclists; and restriping the corridor to a typical cross-section of two northbound lanes and two southbound lanes (plus turn lanes where feasible), with crosswalk markings replaced in-kind on asphalt and new stop bars and lane-use arrows installed at intersection approaches as warranted.

This project supports implementation of Executive Order 14252, "Making the District of Columbia Safe and Beautiful" by advancing coordinated stewardship and improved visual quality of prominent federal public spaces through removal of roadway appurtenances and restoration of a standardized, maintainable corridor configuration within the existing roadway prism.

With the upcoming National Cherry Blossom Festival and preparations underway for Americas 250th anniversary, ensuring safe access for residents, commuters, visitors, and emergency services is a shared priority. These nationally significant events draw substantial visitation and require coordinated infrastructure planning to support mobility, security, and a positive experience for all.

**Area of potential effects (as defined in 36 CFR 800.16[d])**

**3. Has the area of potential effects been surveyed to identify historic properties?**

    _____ **No**

    _X_ **Yes**

        **Source or reference:** Washington Monument Grounds Cultural Landscape Inventory (2022)
        National Mall Historic District National Register Nomination (1981, additional documentation 2016)
        The Mall Cultural Landscape Inventory (2006, 2012, 2018)
        Tidal Basin CLR

West Potomac Park Cultural Landscape Inventory (2022)
East and West Potomac Parks NR Nomination 01000271 (1973, updated 2001)
Events and Celebrations of the National Mall and Presidents Park South Historic Resource Survey
Summer in the Parks Special Resource Study (2019)
Thomas Jefferson Memorial Cultural Landscape Inventory

## 4. Potentially Affected Resource(s):

**Archeological Resources Present:** No

**Archeological Resources Notes:**   There are no known archeological resources within the APE of the project.

**Historical Structures/Resources Present:** Yes

    **Property Name:** Outlet Bridge **-** Res. 332    **LCS:** 46855    **Asset:** 33219000

    **Property Name:** Monument Lodge **-** Res. 2    **LCS:** 100069    **Asset:** 00212000
    **Location:** Reservation 2, 14th Street NW

    **Property Name:** Constitution Avenue    **LCS:** 46871    **Asset:** 81000000
    **Location:** Reservation 332, Constitution Gardens, NW Washington DC

    **Property Name:** External**-** Smithsonian American History Museum    **LCS:**
    **Location:** The Mall

    **Property Name:** Washington Monument **-** Res. 2    **LCS:** 1372    **Asset:** 00220000
    **Location:** Reservation 2 14th Street NW

    **Property Name:** Independence Avenue, SW    **LCS:** 46872    **Asset:** 82000000
    **Location:** Reservation 332, West Potomac Park, SW Washington DC

    **Property Name:** External**-** US Department of Agriculture Building    **LCS:**

    **Property Name:** Thomas Jefferson Memorial **-** Res. 332    **LCS:** 733    **Asset:** 33216001
    **Location:** Reservation 332, East Basin Drive SW

    **Property Name:** 15th Street, NW &SW    **LCS:**

**Historical Structures/Resources Notes:**   Per an executive order regarding access to public lands, NAMA is proposing to remove the cycle track as a part of a milling and overlay project for 15th street NW. NAMA will remove the existing rubber curbing and bike stops and return the space encompassed by the cycle track as a lane of vehicular traffic. The removal of the curb will return 15th Street back to a design that is in keeping with the historic character of the circulation route. The land use of the road way as a vehicular mode of transportation will continue.

15th Street is a contributing circulation corridor of the NAMA portfolio. The road was first platted in the L'Enfant Plan and extended in subsequent decades by the US Army Corp of Engineers and the Office of Public Buildings and Grounds and incorporated into the transportation network of Washington DC.

**Cultural Landscapes Present:** Yes

    **Property Name:** The Mall, Reservations 3,3B, 4,5,6    **LCS:**
    **Location:** Reservation 3, 3B, 4, 5 6, The Mall; SW and NW Washington DC

**Property Name:** Tidal Basin    **LCS:**
**Location:** Reservation 332; West Potomac Park, SW Washington DC

**Property Name:** Washington Monument Grounds    **LCS:**
**Location:** Reservation 2; Washington Monument Grounds, NW and SW Washington, DC

**Property Name:** West Potomac Park, Reservation 332    **LCS:**
**Location:** Reservation 332, West Potomac Park, NW and SW Washington DC

**Property Name:** Thomas Jefferson Memorial Landscape    **LCS:**
**Location:** Reservation 332, West Potomac Park, Thomas Jefferson Memorial Grounds, SW Washington DC

**Cultural Landscapes Notes:**    West Potomac Park, a spatially and functionally distinct area within the National Register-listed East and West Potomac Parks Historic District, and the National Register-listed National Mall Historic District, possesses historical significance and is potentially eligible on a national and local level under Criterion A in the areas of Politics/Government, Commemoration, Entertainment/Recreation, Social History, and Ethnic History (Black); on a national and local level under Criterion C in the areas of Community Planning and Development, Engineering, Architecture, Art, Landscape Architecture, and Transportation; and under Criterion D in the area of Archeology. The period of significance for Criterion A is 1791, the year in which President George Washington selected the site of the Nation's Capital and retained Pierre L'Enfant to develop a plan for the city, to the present, and 1791 to 1965 for Criteria C and D.

**Ethnographic Resources Present:** No

**5. The proposed action will: (check as many as apply)**

No   Destroy, remove, or alter features/elements from a historic structure

Yes  Replace historic features/elements in kind

No   Add non-historic features/elements to a historic structure

No   Alter or remove features/elements of a historic setting or environment (inc. terrain)

No   Add non-historic features/elements (inc. visual, audible, or atmospheric) to a historic setting or cultural landscape

No   Disturb, destroy, or make archeological resources inaccessible

No   Disturb, destroy, or make ethnographic resources inaccessible>

No   Potentially affect presently unidentified cultural resources

No   Begin or contribute to deterioration of historic features, terrain, setting, landscape elements, or archeological or ethnographic resources

No   Involve a real property transaction (exchange, sale, or lease of land or structures)

_____   Other (please specify): _____

**6. Supporting Study Data:**
**(Attach if feasible; if action is in a plan, EA or EIS, give name and project or page number.)**

**B. REVIEWS BY CULTURAL RESOURCE SPECIALISTS**

The park 106 coordinator requested review by the park's cultural resource specialist/advisors as indicated by check-off boxes or as follows:

**[ X ] 106 Advisor**
**Name:** Jason Theuer

**Date:** 02/19/2026
**Comments:** Undertaking restores the transportation feature to its original historic condition.

***Check if project does not involve ground disturbance* [    ]**
**Assessment of Effect:**   ___No Potential to Cause Effect     ___No Historic Properties Affected    __X__No Adverse Effect     ___Adverse Effect
**Recommendations for conditions or stipulations:**

**Doc Method:**  Streamlined Review
**Activity:**
   3. Repair/Resurfacing/Removal of Existing, Roads, Trails and Parking Areas

---

**No Reviews From**: Curator, Archeologist, Historical Architect, Historian, Other Advisor, Anthropologist, Historical Landscape Architect

---

## C. PARK SECTION 106 COORDINATOR'S REVIEW AND RECOMMENDATIONS

### 1. Assessment of Effect:

| | |
|---|---|
| _____ | No Potential to Cause Effects |
| _____ | No Historic Properties Affected |
| X | No Adverse Effect |
| _____ | Adverse Effect |

### 2. Documentation Method:

**[    ] Standard 36 CFR Part 800 Consultation**
Further consultation under 36 CFR Part 800 is needed.

**[ X ] Streamlined Review Under the 2008 Servicewide Programmatic Agreement (PA)**
The above action meets all conditions for a streamlined review under section III of the 2008 Servicewide PA for Section 106 compliance.

**Applicable Activities:**

3. Repair/Resurfacing/Removal of Existing, Roads, Trails and Parking Areas.

**[    ] Program Comment on Stewardship and Management of National Park Service Mission 66-Era Facilities (1945-1972)**
The above action meets all of the requirements of this Program Comment for Section 106 compliance and required documents have been uploaded.

**[    ] Undertaking Related to Park Specific or Another Agreement**
The proposed undertaking is covered for Section 106 purposes under another document such as a park, region or statewide agreement established in accord with 36 CFR 800.7 or 36 CFR 800.14.

### 3. Consultation Information

**SHPO Required:**
**SHPO Sent:**
**SHPO Received:**

**THPO Required:** No
**THPO Sent:**
**THPO Received:**

**SHPO/THPO Notes:**

   **Advisory Council Participating:** No
   **Advisory Council Notes:**
   **Additional Consulting Parties:** No

**4. Stipulations and Conditions:** Following are listed any stipulations or conditions necessary to ensure that the assessment of effect above is consistent with 36 CFR Part 800 criteria of effect or to avoid or reduce potential adverse effects.

**5. Mitigations/Treatment Measures:** Measures to prevent or minimize loss or impairment of historic/prehistoric properties: (Remember that setting, location, and use may be relevant.)

   No Assessment of Effect mitigations identified.

**6. Assessment of Effect Notes:**

The project as presented will have "No Adverse Effect" on the cultural resources of the NAMA portfolio and generally conforms to the intent of the 2008 NHPA Programmatic Agreement Streamlined Activity No 3 regarding the repair and resurfacing of an existing roadway. The National Mall and Memorial Parks is proposing an undertaking that will remove the existing cycle track from 15th Street Northwest from Constitution Avenue south towards the Thomas Jefferson Memorial in West Potomac Park. The undertaking will remove the existing wheel stops, hazard cones, and striping associated with the existing non- historic cycle track. The removal of the cycle track will expand the number of vehicular lanes of travel to a configuration that historically was present on the corridor. The location of the cycle track will be treated with milling and overlaying that will match the remainder of the transportation corridor, making it undiscernible from the remainder of the route at the completion of the project.

Regarding archeological resources, while there is minimal ground disturbance, there are no known archeological sites within the APE of the project. Therefore, there will be no adverse effect to archeological resources.

Regarding cultural landscapes, the removal of the cycle track will not have an adverse effect on cultural resources as it will return the feature to a configuration that was present during the period of significance. The land use of 15th Street will remain the same and is in keeping with the use of the feature during the period of significance.

**D. RECOMMENDED BY PARK SECTION 106 COORDINATOR:**

**Compliance Specialist:**   Jason G. Theuer, Regional 106 Coordinator NPS-NCR; Acting NAMA RM Chief
**NHPA Specialist**   JASON THEUER   Digitally signed by JASON
Daniel Weldon                    THEUER
                                 Date: 2026.02.23 07:31:03 -05'00'   **Date:** _____

**E. SUPERINTENDENT'S APPROVAL**

The proposed work conforms to the NPS *Management Policies* and *Cultural Resource Management Guideline*, and I have reviewed and approve the recommendations, stipulations, or conditions noted in Section C of this form.

**Superintendent:** <u>KEVIN GRIESS</u> **Date:** <u>                    </u>

Signature
Digitally signed by KEVIN GRIESS
Date: 2026.02.23 07:42:59 -05'00'

Kevin Griess



**National Park Service**
**U.S. Department of the Interior**

**National Mall and Memorial Parks**

# Categorical Exclusion Documentation Form (CE Form)

**Project:** 15th Street Cycle Track Removal and road repaving

**PEPC Project Number:** 134934

**Description of Action (Project Description):** The work consists of removing existing cycle-track and bicycle-related traffic control features and restoring the roadway to a conventional lane configuration within the existing curb lines along three segments—15th St NW / Raoul Wallenberg Pl SW (Constitution Ave NW to Maine Ave SW), Maine Ave SW (15th St NW to Ohio Dr SW/East Basin Dr SW—southbound), and Ohio Dr SW/East Basin Dr SW (Maine Ave SW to the Jefferson Memorial Food Kiosk—southbound)—including removal of cycle track barriers/delineator posts and anchor bolts with restoration of resulting voids; milling and overlaying asphalt within curb faces to a maximum treatment depth of ≤ 4 inches; grinding/removing existing pavement markings within concrete bus laybys; removing bicycle signal faces and retiming/rephasing traffic signals as needed; removing bicycle route signage and installing new signage (and striping transitions) at the north and south project limits to safely transition bicyclists; and restriping the corridor to a typical cross-section of two northbound lanes and two southbound lanes (plus turn lanes where feasible), with crosswalk markings replaced in-kind on asphalt and new stop bars and lane-use arrows installed at intersection approaches as warranted.

This project supports implementation of Executive Order 14252, "Making the District of Columbia Safe and Beautiful" by advancing coordinated stewardship and improved visual quality of prominent federal public spaces through removal of roadway appurtenances and restoration of a standardized, maintainable corridor configuration within the existing roadway prism.

With the upcoming National Cherry Blossom Festival and preparations underway for America's 250th anniversary, ensuring safe access for residents, commuters, visitors, and emergency services is a shared priority. These nationally significant events draw substantial visitation and require coordinated infrastructure planning to support mobility, security, and a positive experience for all.

**Project Location:**
**County, State:** District of Columbia, DC

**Mitigation(s):**
There are no required mitigations identified.

**CE Citation:** DOI NEPA Handbook, Appendix 2, NPS, 12.6 (13).
Modernization of a highway by resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes (including parking, weaving, turning, and climbing lanes), if the actions meet the constraints [below] in paragraph (e) of this section. Actions described in (c)(26), (c)27, and (c)(28) of this section may not be processed as CEs under paragraph (c) if they involve:

1. An acquisition of more than a minor amount of right-of-way or that would result in any residential or non-residential displacements;
2. An action that needs a bridge permit from the U.S. Coast Guard, or an action that does not meet the terms and conditions of a U.S. Army Corps of Engineers nationwide or general permit under section 404 of the Clean Water Act and/or section 10 of the Rivers and Harbors Act of 1899;
3. A finding of "adverse effect" to historic properties under the National Historic Preservation Act, the use of a resource protected under 23 U.S.C. 138 or 49 U.S.C. 303 (section 4(f)) except for actions resulting in *de minimis*

impacts, or a finding of "may affect, likely to adversely affect" threatened or endangered species or critical habitat under the Endangered Species Act; *de minimis* impacts, or a finding of "may affect, likely to adversely affect" threatened or endangered species or critical habitat under the Endangered Species Act;

4.  Construction of temporary access or the closure of existing road, bridge, or ramps that would result in major traffic disruptions;
5.  Changes in access control;
6.  A floodplain encroachment other than functionally dependent uses (e.g., bridges, wetlands) or actions that facilitate open space use (e.g., recreational trails, bicycle and pedestrian paths); or construction activities in, across or adjacent to a river component designated or proposed for inclusion in the National System of Wild and Scenic Rivers.

Actions may be designated as CEs only after documentation demonstrates that the specific conditions or criteria for these CEs are satisfied, and that significant environmental effects will not result. [If the action triggers a constraint (1)-(6) above, the CE can still be applied if the documentation demonstrates that the action fits within the CE and significant environmental effects will not result.] (90 FR 24644)

**CE Justification:** Based on the limited scope, confined limits of disturbance, and use of standard resurfacing and traffic-control methods, the action fits NPS CE 12.6(13) and, as documented below, does not trigger any of the six constraints such that significant environmental effects would be expected.

1.  **An acquisition of more than a minor amount of right-of-way or that would result in any residential or non-residential displacements**

    All work is confined to the existing paved roadway area within existing curbs. No new right-of-way is needed and no acquisitions are proposed. The action does not require relocation of residences or businesses and does not change adjacent land uses.

2.  **An action that needs a bridge permit from the U.S. Coast Guard, or an action that does not meet the terms and conditions of a U.S. Army Corps of Engineers nationwide or general permit under section 404 of the Clean Water Act and/or section 10 of the Rivers and Harbors Act of 1899**

    The action is roadway surface work and traffic-control equipment removal/adjustment within an existing roadway, with no bridge work and no in-water work. No dredge/fill discharge to waters of the U.S. is proposed and no structures are proposed in navigable waters.

3.  **A finding of 'adverse effect' to historic properties under the NHPA, the use of a resource protected Section 4(f)) or a finding of 'may affect, likely to adversely affect' threatened or endangered species or critical habitat under the Endangered Species Act; de minimis impacts, or a finding of 'may affect, likely to adversely affect' threatened or endangered species or critical habitat under the Endangered Species Act**

    NHPA - the project removes appurtenant features (barriers, delineators, bicycle signal faces, bicycle signs), restores the roadway surface, and restripes within the existing paved roadway. With no new ground disturbance outside the pavement section and no new above-ground permanent additions beyond standard roadway markings/signing, the undertaking can be supported as No Adverse Effect.

    Section 4(f) - The action is within an existing transportation facility and does not convert parkland to transportation use; it changes lane configuration/operations on existing roadway pavement.

    ESA - For resurfacing/striping/signals action within existing roadway, there is no effect under the ESA.

4.  **Construction of temporary access or the closure of existing road, bridge, or ramps that would result in major traffic disruptions**

    The proposed action is confined to the existing roadway prism and will be implemented using standard paving and traffic-control methods (lane shifts, short-duration lane closures, and/or off-peak work) to maintain traffic circulation and emergency access through the corridor. Any temporary restrictions needed to complete resurfacing, striping, and signal work would be limited in duration and extent, would not require construction of temporary access routes, and would not involve closure of a road, bridge, or ramp in a manner that causes major traffic disruptions.

5.  **Changes in access control**

The action does not introduce access control features suc as new medians restricting turning movements, new gates, restricted-access designation, or conversion to controlled-access facility. It is operational striping/signal timing within the existing roadway.

6.  **A floodplain encroachment**

The work is confined to an existing roadway prism. If any portion of the roadway is within a mapped floodplain, resurfacing within the existing footprint is typically treated as maintenance of an existing functionally dependent facility (transportation infrastructure) and does not create a new encroachment. No work is proposed in or across a designated/proposed Wild & Scenic River segment.

**Extraordinary Circumstances:**

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| **A.** Have significant impacts on public health or safety? | No | Removal of the separated bicycle facility will have an operational effect on bicyclists, including a change in facility type and user experience on a corridor that has been documented as carrying more than 2,000 bicycle users per day. However, NEPA significance for categorical exclusions is evaluated in terms of significant environmental impacts, including whether an action results in significant impacts on travel patterns or other natural, cultural, recreational, historic, air/noise/water resources. The proposed action is confined to the existing roadway prism and consists of resurfacing/rehabilitation and traffic-control changes (striping, signing, and signal adjustments) without expanding the transportation footprint or inducing land use change. The project includes traffic-control measures, clear transition signing/markings at the project termini, and coordination with the local transportation agency to maintain bicycle accommodation and manage operational transitions. With these measures, the action is not expected to cause significant environmental impacts or constitute an extraordinary circumstance. The project does not eliminate bicycle travel in the corridor; it changes the facility type and restores conditions that already existed prior to the installation of the separated bicycle facility. NPS will implement transition signing/markings and will monitor operations after implementation and adjust striping/signals as warranted to address observed operational issues. |
| **B.** Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands; floodplains; national monuments; migratory birds; and other ecologically significant or critical areas? | No | The proposed work is confined to the existing curb-to-curb roadway prism and consists of removing existing cycle track appurtenances (barriers/delineators and anchor bolts), resurfacing (mill-and-overlay, with a stated maximum treatment depth), restriping, and related signal/sign removals/adjustments. Because the project does not expand the roadway footprint, does not involve new ground disturbance outside the paved section, and does not propose in-water work, effects to the resource categories listed below are expected to be temporary, localized, and not significant. |
| **C.** Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks? | No | These are standard, well-understood construction activities with predictable, short-term effects (temporary construction noise, dust, traffic control, and material handling) and established best management practices. The action does not introduce new technology, new access routes, in-water work, excavation beyond the stated pavement treatment depth, or |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| | | expansion into undeveloped areas that would create unknown risk pathways. Similarly, while the work is likely to result in changes in transportation conditions and modes of transportation used on these roads, the effects are predictable and well-understood and restore past roadway conditions. |
| **D.** Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects? | No | It does not approve, commit, or predetermine any broader transportation program, corridor-wide redesign, roadway expansion, or land use change. Any future transportation or multimodal changes in the memorial core would require their own purpose-and-need, design development, and separate compliance review based on the specifics of those proposals and their potential effects. |
| **E.** Have a direct relationship to other actions that implicate potentially significant environmental effects? | No | While the project is being coordinated with routine roadway preservation and near-term construction scheduling in the vicinity, those activities are of the same general type (pavement rehabilitation/traffic control) and do not constitute a larger connected action that would trigger or depend on a separate action with potentially significant effects. The removal and resurfacing action has independent utility and does not rely on, commit the agency to, or predetermine any broader transportation program, footprint expansion, or land-use change. |
| **F.** Have significant impacts on properties listed, or eligible for listing, on the National Register of Historic Places as determined by the bureau? | No | The project occurs in a historically sensitive setting; however, it is confined to the existing curb-to-curb roadway prism and consists of removal of existing cycle track appurtenances with surface restoration, mill-and-overlay resurfacing (limited to the specified maximum depth), restriping, and minor signal/sign adjustments. It will restore roadway conditions that previously existed before the installation of the separated bicycle facility. The action does not expand the roadway footprint or disturb areas outside the existing paved facility. Section 106 documentation is completed for this undertaking; with a finding of no adverse effect. |
| **G.** Have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species or have significant impacts on designated Critical Habitat for these species? | No | The project does not include vegetation clearing, tree removal, habitat conversion, excavation outside the paved roadway section, or in-water work. Because effects are limited to temporary construction disturbances (noise, equipment presence, localized dust) within an already developed roadway, the action is not anticipated to adversely affect listed/proposed species or designated critical habitat, and significant impacts are not expected. |
| **H.** Significantly limit access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites? | No | The project does not expand the transportation footprint, does not involve ground disturbance outside the paved roadway, and does not change public access to adjacent park areas beyond short-term, managed construction traffic control. Because the action occurs within an already developed roadway corridor and does not affect natural features, landscape elements, or access routes associated with ceremonial practice, it is not expected to limit access to or ceremonial use of Indian sacred sites, nor to adversely affect the physical integrity of such sites. |
| **I.** Contribute to potentially significant effects resulting from the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or from other actions that promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act)? | No | The project does not include vegetation clearing, soil disturbance in landscaped areas, off-road staging, or import of fill/soil to vegetated areas—activities that typically create pathways for invasive plant introduction. Because disturbance is limited to paved surfaces and work areas can be kept on asphalt/concrete, the action is not expected to introduce, |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
|  |  | spread, or expand noxious weeds or non-native invasive species, and potentially significant effects are not anticipated. |

**Decision: I find that the action fits within the categorical exclusion(s) above. Therefore, I am categorically excluding the described project from further NEPA analysis. No extraordinary circumstances apply.**

**Superintendent Signature:** KEVIN GRIESS  Digitally signed by KEVIN GRIESS  Date: 2026.02.23 07:43:27 -05'00'   **Date:** _____

Kevin Griess

Case 1:26-cv-00988-ABJ  Document 16  Filed 03/31/26  Page 18 of 42



**Dowden, Kurt <kurt.dowden@dot.gov>**

---

## RE: [EXTERNAL] FW: 15st Paving Operations & MOT
1 message

---

**O'Brien, Libby (FHWA)** <libby.obrien@dot.gov>                    Fri, Feb 20, 2026 at 10:34 AM
To: "Dowden, Kurt (FHWA)" <Kurt.Dowden@dot.gov>, "Fetzer, Julie" <julie_fetzer@nps.gov>
Cc: "Camacho, Daniel (FHWA)" <Daniel.Camacho@dot.gov>, "Close, Chris" <Chris_Close@nps.gov>, "Fabis, Joseph (FHWA)" <Joseph.Fabis@dot.gov>, "Stidham, Tammy (NPS)" <tammy_stidham@nps.gov>, "Burnell, Chris (FHWA)" <Chris.Burnell@dot.gov>, "O'Brien, Sean (FHWA)" <Sean.O'Brien@dot.gov>

Julie,

Attached are the MOT plans used for the 15th Street paving in Oct/Nov 2025 and the MOT plan used for the recent work on Maine/Ohio/ East Basin in NAMA 12(3). Both utilize complete road closures, but are intended to be completed in phases/rolling closures as indicated in your email below. The 15th Street MOT can remain as is since we just used this 4 months ago. We are still evaluating the Maine/Ohio/East Basin MOT to ensure its comprehensive to the work and the availability of proposed signage, but it is a great base to work from. I don't anticipate any major changes. Let me know if you need more detail to keep NEPA moving.

Thanks,

Libby

Libby O'Brien, PE

Highway Design Branch Chief

Eastern Federal Lands Highway Division

Federal Highway Administration



U.S. Department of Transportation

Office: (703) 948-1440

Cell: (703) 965-0053

Libby.OBrien@dot.gov

FHWA-AR_018

**From:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Sent:** Thursday, February 19, 2026 3:10 PM
**To:** Fetzer, Julie <julie_fetzer@nps.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>; Stidham, Tammy (NPS) <tammy_stidham@nps.gov>
**Subject:** RE: [EXTERNAL] FW: 15st Paving Operations & MOT

Julie,

We will work to provide additional details by COB tomorrow, Friday 2/20.

Thanks

Kurt

---

**From:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Sent:** Thursday, February 19, 2026 1:13 PM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>; Stidham, Tammy (NPS) <tammy_stidham@nps.gov>
**Subject:** Re: [EXTERNAL] FW: 15st Paving Operations & MOT

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi all,

I'm looping in Tammy Stidham, Associate Regional Director of Lands and Planning, for compliance coordination.

We noted the offer below regarding additional specifics on the equipment layout and the MOT plan. We would appreciate any further details you can provide about the MOT plan at your earliest convenience, as the compliance path forward will depend on this information.

Thank you,

Julie

FHWA-AR_019

**Julie Fetzer**

**Transportation Program Manager (Acting)**

Facilities, Design & Construction Directorate

National Capital Regional Office

National Park Service

---

**From:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Sent:** Thursday, February 19, 2026 11:33 AM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris H <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>
**Subject:** Re: [EXTERNAL] FW: 15st Paving Operations & MOT

Good morning,

Thank you for the thoughtful response. I've shared your feedback with our compliance staff for their consideration. They had raised the question because the CE they had planned to utilize includes some limiting language regarding full roadway closures. They are now evaluating whether a rolling closure (i.e. full closures of roadway segments in phases instead of the whole corridor) could be permissible under the language of the CE.

Based on our previous discussion, I had communicated that this style of segmented rolling closure had been proposed (split into SB West Basin//Maine to Independence//Independence to Constitution), but please let me know if that's not the case. Otherwise, I'll let you know as soon as I have more information about the compliance.

Thank you,

Julie

**Julie Fetzer**

**Transportation Program Manager (Acting)**

Facilities, Design & Construction Directorate

National Capital Regional Office

National Park Service

---

**From:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Sent:** Thursday, February 19, 2026 10:32 AM
**To:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris H <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>
**Subject:** [EXTERNAL] FW: 15st Paving Operations & MOT

FHWA-AR_020

Kurt, as discussed

In reviewing the traffic control and construction logistics regarding the request to keep 15th St. open during the proposed work, we really need to maintain the full closure for these segments to hit our quality and schedule targets for this cold-weather paving operation.

From an operational standpoint, a partial opening presents a few significant hurdles:

- **Equipment Footprint:** Our plan for echelon paving (side-by-side formation to lay multiple lanes simultaneously) requires a large equipment train, including 5 rollers, MTVs, and a constant flow of trucks. Between the machinery, paving labor, and the necessary QA/QC and additional research and inspection staff on the ground, we don't have the lateral clearance to safely manage live traffic alongside the work zone.

- **Traffic Management:** Managing local access at the intersections would be a major lift. A full closure is much cleaner to message to the public and avoids the confusion of who is allowed through, which keeps the work zone secure.

- **Resource Readiness:** We already have the full-closure signage in stock and ready to deploy. Shifting to a partial closure would require a new MOT plan and additional coordination with DC Police for intersection control, which could delay our start date.

- **Production & Quality:** Given the cold weather, we need to move quickly to maintain mat temperature. A full closure allows the crew to focus entirely on production without the delays associated with managing adjacent traffic.

Sticking with the full closure seems like the most straightforward path to getting this done safely and on schedule. Let me know if you need any more specifics on the equipment layout or the MOT plan.

Danny

**Daniel Camacho Maldonado, P.E.**

Construction Engineer

Eastern Federal Lands Highway Division

Federal Highway Administration

22001 Loudoun County Parkway

Building E-2, Suite 200

Ashburn, Virginia  20147

Office: 703-404-6263

Mobile: 703-307-5572

FHWA-AR_021

> **This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

Julie,

Following up yesterday's communication regarding full roadway closure for the subject project.  EFL discussed and offers the information in the email below.  In addition to the reasons offered below, I would also emphasize the additional safety that full road closure provides.  There has been some indication from the public that there may be an attempt to interrupt construction operations and maintaining full roadway closure will significantly improve the ability to control unauthorized vehicles from entering the construction area thereby protecting the workers as well as preventing interference with production.

Please let me know if we need to discuss.

Thanks



Kurt Dowden

Chief of Engineering

EFLHD-FHWA

U.S. Department of Transportation

Kurt.Dowden@dot.gov

---

**From:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>
**Sent:** Thursday, February 19, 2026 9:28 AM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>
**Subject:** 15st Paving Operations & MOT

FHWA-AR_022

---

**3 attachments**

 **NAMA 12(3) Maine Ave to Ohio Dr MOT example.pdf**
209K

 **15th Street Northbound Detour.pdf**
4594K

 **15th Street Southbound Detour.pdf**
9722K

FHWA-AR_023









Rose, Kevin <kevin.rose@dot.gov>

# 15th Street Cycle Track Removal and road repaving_EFL-TM-ENV-03_Categorical-Exclusion-FHWA (1).pdf
3 messages

**Rose, Kevin (FHWA)** <Kevin.Rose@dot.gov>                                           Fri, Feb 27, 2026 at 1:59 PM
To: "Stern, Kelly (FHWA)" <kelly.stern@dot.gov>

I signed it anyway!

📄 **15th Street Cycle Track Removal and road repaving_EFL-TM-ENV-03_Categorical-Exclusion-FHWA (1).pdf**
351K

**Rose, Kevin (FHWA)** <Kevin.Rose@dot.gov>                                          Wed, Mar 4, 2026 at 9:01 AM
To: "Stern, Kelly (FHWA)" <kelly.stern@dot.gov>

Thanks again for getting this done. Kurt just asked about it and I was able to inform him that it had been completed.

**From:** Rose, Kevin (FHWA)
**Sent:** Friday, February 27, 2026 2:00 PM
**To:** Stern, Kelly (FHWA) <kelly.stern@dot.gov>
**Subject:** 15th Street Cycle Track Removal and road repaving_EFL-TM-ENV-03_Categorical-Exclusion-FHWA (1).pdf

I signed it anyway!

**Stern, Kelly (FHWA)** <kelly.stern@dot.gov>                                         Wed, Mar 4, 2026 at 9:02 AM
To: "Rose, Kevin (FHWA)" <Kevin.Rose@dot.gov>

You're welcome!

Case 1:26-cv-00988-ABJ   Document 16   Filed 03/31/26   Page 28 of 42

AR_028



Kelly Stern

Environmental Protection Specialist

Eastern Federal Lands Highway Division

U.S. Department of Transportation

kelly.stern@dot.gov

[Quoted text hidden]

FHWA-

Case 1:26-cv-00988-ABJ    Document 16    Filed 03/31/26    Page 29 of 42

AR_029



**Dowden, Kurt <kurt.dowden@dot.gov>**

---

## RE: [EXTERNAL] FW: 15st Paving Operations & MOT
1 message

---

**Dowden, Kurt (FHWA)** <Kurt.Dowden@dot.gov>                                    Wed, Mar 4, 2026 at 8:46 AM
To: "Rose, Kevin (FHWA)" <Kevin.Rose@dot.gov>
Cc: "Gutierrez, Vivian M (FHWA)" <vivian.m.gutierrez@dot.gov>

Kevin,

Just checking in on status of FHWA's NEPA for subject project.

Thanks

Kurt

---

**From:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Sent:** Monday, February 23, 2026 6:31 PM
**To:** Rose, Kevin (FHWA) <Kevin.Rose@dot.gov>; Hsieh, Milton (FHWA) <Milton.Hsieh@dot.gov>
**Cc:** Marshall, Timothy (FHWA) <Timothy.Marshall@dot.gov>; Bell, Holly (FHWA) <Holly.Bell@dot.gov>; Gutierrez,
Vivian M (FHWA) <vivian.m.gutierrez@dot.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>
**Subject:** Fw: [EXTERNAL] FW: 15st Paving Operations & MOT

Kevin and Milton,

Attached is the completed CE for the subject project.

Kurt

---

**From:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Sent:** Monday, February 23, 2026 6:24 PM
**To:** O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris <Chris_Close@nps.gov>; Fabis, Joseph (FHWA)
<Joseph.Fabis@dot.gov>; Burnell, Chris (FHWA) <Chris.Burnell@dot.gov>; O'Brien, Sean (FHWA) <Sean.O'Brien@dot.gov>
**Subject:** Re: [EXTERNAL] FW: 15st Paving Operations & MOT

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments
unless you recognize the sender and know the content is safe.

FHWA-AR_030

Hi all,

The compliance has been completed. Please see the attached documentation.

I have been keeping internal leadership informed that a green light from FHWA leadership is still pending. Please let us know as soon as any updates are available, or whenever you have additional materials to share (e.g. schedule, paving plan, striping plan revisions).

Thank you,
Julie

**Julie Fetzer**

**Transportation Program Manager (Acting)**

Facilities, Design & Construction Directorate

National Capital Regional Office

National Park Service

---

**From:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Sent:** Friday, February 20, 2026 11:23 AM
**To:** O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris H <Chris_Close@nps.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>; Stidham, Tammy <Tammy_Stidham@nps.gov>; Burnell, Chris (FHWA) <Chris.Burnell@dot.gov>; O'Brien, Sean (FHWA) <Sean.O'Brien@dot.gov>
**Subject:** Re: [EXTERNAL] FW: 15st Paving Operations & MOT

Thank you, Libby! Our compliance staff will review may follow up with any questions or concerns.

In the interim, I did want to flag that based on the proposed closures, outreach will be required minimally to the Bureau of Engraving and Printing, the Holocaust Memorial Museum, and the African American History Museum. Impacts to their building access may have been less noticeable in Fall 2025 due to the federal shutdown, but I do believe advanced notice in this case will be required, as soon as the construction schedule is better defined.

Additionally, based on the draft MOT plan, it appears a DDOT Public Space Permit would be required due to proposed signage and detours within DDOT right-of-way. I understand discussions between FHWA and DDOT are still ongoing, but wanted to flag it for awareness.

Thanks,

Julie

**Julie Fetzer**

FHWA-AR_031

**Transportation Program Manager (Acting)**

Facilities, Design & Construction Directorate

National Capital Regional Office

National Park Service

---

**From:** O'Brien, Libby (FHWA) <libby.obrien@dot.gov>
**Sent:** Friday, February 20, 2026 10:34 AM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>; Fetzer, Julie A <julie_fetzer@nps.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris H <Chris_Close@nps.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>; Stidham, Tammy <Tammy_Stidham@nps.gov>; Burnell, Chris (FHWA) <Chris.Burnell@dot.gov>; O'Brien, Sean (FHWA) <Sean.O'Brien@dot.gov>
**Subject:** RE: [EXTERNAL] FW: 15st Paving Operations & MOT


Julie,

Attached are the MOT plans used for the 15th Street paving in Oct/Nov 2025 and the MOT plan used for the recent work on Maine/Ohio/ East Basin in NAMA 12(3). Both utilize complete road closures, but are intended to be completed in phases/rolling closures as indicated in your email below. The 15th Street MOT can remain as is since we just used this 4 months ago. We are still evaluating the Maine/Ohio/East Basin MOT to ensure its comprehensive to the work and the availability of proposed signage, but it is a great base to work from. I don't anticipate any major changes. Let me know if you need more detail to keep NEPA moving.

Thanks,

Libby




Libby O'Brien, PE
Highway Design Branch Chief
Eastern Federal Lands Highway Division
Federal Highway Administration
U.S. Department of Transportation
Office: (703) 948-1440
Cell: (703) 965-0053
Libby.OBrien@dot.gov

---

**From:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Sent:** Thursday, February 19, 2026 3:10 PM
**To:** Fetzer, Julie <julie_fetzer@nps.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>; Stidham, Tammy (NPS) <tammy_stidham@nps.gov>
**Subject:** RE: [EXTERNAL] FW: 15st Paving Operations & MOT

Julie,

We will work to provide additional details by COB tomorrow, Friday 2/20.

Thanks

Kurt

**From:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Sent:** Thursday, February 19, 2026 1:13 PM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>; Stidham, Tammy (NPS) <tammy_stidham@nps.gov>
**Subject:** Re: [EXTERNAL] FW: 15st Paving Operations & MOT

**CAUTION:** This email originated from outside of the Department of Transportation (DOT). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Hi all,

I'm looping in Tammy Stidham, Associate Regional Director of Lands and Planning, for compliance coordination.

We noted the offer below regarding additional specifics on the equipment layout and the MOT plan. We would appreciate any further details you can provide about the MOT plan at your earliest convenience, as the compliance path forward will depend on this information.

Thank you,
Julie

**Julie Fetzer**
**Transportation Program Manager (Acting)**
Facilities, Design & Construction Directorate
National Capital Regional Office
National Park Service

---

**From:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Sent:** Thursday, February 19, 2026 11:33 AM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris H <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>
**Subject:** Re: [EXTERNAL] FW: 15st Paving Operations & MOT

Good morning,

Thank you for the thoughtful response. I've shared your feedback with our compliance staff for their consideration. They had raised the question because the CE they had planned to utilize includes some limiting language regarding full roadway closures. They are now evaluating whether a rolling closure (i.e. full closures of roadway segments in phases instead of the whole corridor) could be permissible under the language of the CE.

Based on our previous discussion, I had communicated that this style of segmented rolling closure had been proposed (split into SB West Basin//Maine to Independence//Independence to Constitution), but please let me know if that's not the case. Otherwise, I'll let you know as soon as I have more information about the compliance.

Thank you,
Julie

**Julie Fetzer**
**Transportation Program Manager (Acting)**
Facilities, Design & Construction Directorate
National Capital Regional Office
National Park Service

---

**From:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Sent:** Thursday, February 19, 2026 10:32 AM
**To:** Fetzer, Julie A <julie_fetzer@nps.gov>
**Cc:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>; Close, Chris H <Chris_Close@nps.gov>; O'Brien, Libby (FHWA) <libby.obrien@dot.gov>; Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>
**Subject:** [EXTERNAL] FW: 15st Paving Operations & MOT

---

**This email has been received from outside of DOI - Use caution before clicking on links, opening attachments, or responding.**

Julie,

Following up yesterday's communication regarding full roadway closure for the subject project. EFL discussed and offers the information in the email below. In addition to the reasons offered below, I would also emphasize the additional safety that full road closure provides. There has been some indication from the public that there may be an attempt to interrupt construction operations and maintaining full roadway closure will significantly improve the ability to control unauthorized vehicles from entering the construction area thereby protecting the workers as well as preventing interference with production.

Please let me know if we need to discuss.

Thanks



Kurt Dowden
Chief of Engineering
EFLHD-FHWA
U.S. Department of Transportation
Kurt.Dowden@dot.gov

---

**From:** Camacho, Daniel (FHWA) <Daniel.Camacho@dot.gov>
**Sent:** Thursday, February 19, 2026 9:28 AM
**To:** Dowden, Kurt (FHWA) <Kurt.Dowden@dot.gov>
**Cc:** Fabis, Joseph (FHWA) <Joseph.Fabis@dot.gov>
**Subject:** 15st Paving Operations & MOT

Kurt, as discussed

In reviewing the traffic control and construction logistics regarding the request to keep 15th St. open during the proposed work, we really need to maintain the full closure for these segments to hit our quality and schedule targets for this cold-weather paving operation.

From an operational standpoint, a partial opening presents a few significant hurdles:

- **Equipment Footprint:** Our plan for echelon paving (side-by-side formation to lay multiple lanes simultaneously) requires a large equipment train, including 5 rollers, MTVs, and a constant flow of trucks. Between the machinery, paving labor, and the necessary QA/QC and additional research and inspection staff on the ground, we don't have the lateral clearance to safely manage live traffic alongside the work zone.

- **Traffic Management:** Managing local access at the intersections would be a major lift. A full closure is much cleaner to message to the public and avoids the confusion of who is allowed through, which keeps the work zone secure.

- **Resource Readiness:** We already have the full-closure signage in stock and ready to deploy. Shifting to a partial closure would require a new MOT plan and additional coordination with DC Police for intersection control, which could delay our start date.

- **Production & Quality:** Given the cold weather, we need to move quickly to maintain mat temperature. A full closure allows the crew to focus entirely on production without the delays associated with managing adjacent traffic.

Sticking with the full closure seems like the most straightforward path to getting this done safely and on schedule. Let me know if you need any more specifics on the equipment layout or the MOT plan.

Danny

**Daniel Camacho Maldonado, P.E.**
Construction Engineer
Eastern Federal Lands Highway Division
Federal Highway Administration
22001 Loudoun County Parkway
Building E-2, Suite 200
Ashburn, Virginia  20147
Office: 703-404-6263
Mobile: 703-307-5572

FHWA-AR_035



Eastern Federal Lands Highway Division
Re-Evaluation

| | | |
|---|---|---|
| **Project Number:** | 15th Street Cycle Track Removal and road repaving | **Date:** 3/31/2026 |
| **Project Name:** | 15th Street Cycle Track Removal and road repaving | |
| **Location:** | National Park Service, National Mall and Memorial Parks<br>District of Columbia, DC | |
| **CE Category** | 23 CFR 771.117(c)(26): Modernization of a highway by resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes (including parking, weaving, turning, and climbing lanes), if the action meets the constraints in paragraph (e)[..] | |

See 23 CFR 771.117 for full description of CE categories, including additional requirements when applying (c)26-28.

---

In accordance with 23 CFR 771.129, FHWA has evaluated proposed changes to the 15th Street Cycle Track Removal and Road Repaving Project and associated impacts, to determine if FHWA's NEPA decision remains valid. On February 27, 2026, FHWA determined that the 15th Street Cycle Track Removal and Road Repaving Project could be categorically excluded, relying on 23 CFR 771.117(c)(26). The February CE Form was issued on the assumption that the project would start on or around that date. Since that form was signed, the project was delayed. The February CE Form assumed that all work would be completed prior to the National Cherry Blossom Festival, or would not interfere with the National Cherry Blossom Festival, which has already begun and will run through April 12, 2026. The project is now anticipated to begin on April 23, 2026, and to conclude by May 14, 2026. Also, since the February CE Form was issued, the National Park Service (NPS) reevaluated its NEPA decision given the revised window for work.  FHWA's reevaluation also considered NPS's updated categorical exclusion documentation issued March 31, 2026.

FHWA has reanalyzed the impacts of the project given the revised work window and has determined that continuing to rely on 23 CFR 771.117(c)(26) is appropriate.  The project scope has not changed; the work still consists of removing existing cycle-track and bicycle-related traffic control features and restoring the roadway to a conventional lane configuration within the existing curb lines along three segments—15th St NW / Raoul Wallenberg Pl SW (Constitution

Page **1** of **2**
EFLHD NEPA Categorical Exclusion Form                                                     EFL-TM-ENV-03(04)
15th Street Cycle Track Removal and road repaving

FHWA-AR_036



Eastern Federal Lands Highway Division
Re-Evaluation

Ave NW to Maine Ave SW), Maine Ave SW (15th St NW to Ohio Dr SW/East Basin Dr SW—southbound), and Ohio Dr SW/East Basin Dr SW (Maine Ave SW to the Jefferson Memorial Food Kiosk— southbound). As stated in the NPS CE and confirmed by FHWA, the project will be implemented using standard traffic-control methods (lane shifts, short-duration lane closures, and/or off-peak work) to maintain traffic circulation and emergency access through the corridor. Any temporary restrictions needed to complete the work will be limited in duration and extent and are not anticipated to result in major traffic disruptions.

According to NPS, shifting work to April 23-May 14, 2026 means the work will now be completed "in the early peak visitor/event season and immediately ahead of the planned U.S. Semiquincentennial (250th) special events period (mid-May through August 2026)."  NPS determined that the selected three weeks represent the best window of time to complete this work before the 250th special events period for the reasons stated in its CE.  FHWA believes that the phased work can be completed from April 23-May 14, 2026 and will work with NPS to mitigate any impacts in light of increased traffic due to the time of year.

**KEVIN S ROSE** Digitally signed by KEVIN S ROSE
Date: 2026.03.31 16:13:28 -04'00'

_____          _____
Kevin S. Rose                                                          Date
Environmental Team Leader
Eastern Federal Lands Highway Division
Federal Highway Administration

Page **2** of **2**
EFLHD NEPA Categorical Exclusion Form                                EFL-TM-ENV-03(04)
15th Street Cycle Track Removal and road repaving

FHWA-AR_037



**National Park Service**
**U.S. Department of the Interior**

**National Mall and Memorial Parks**

# Categorical Exclusion Documentation Form (CE Form)

**Project:** 15th Street Cycle Track Removal and road repaving

**PEPC Project Number:** 134934

**Description of Action (Project Description):** The work consists of removing existing cycle-track and bicycle-related traffic control features and restoring the roadway to a conventional lane configuration within the existing curb lines along three segments—15th St NW / Raoul Wallenberg Pl SW (Constitution Ave NW to Maine Ave SW), Maine Ave SW (15th St NW to Ohio Dr SW/East Basin Dr SW—southbound), and Ohio Dr SW/East Basin Dr SW (Maine Ave SW to the Jefferson Memorial Food Kiosk—southbound)—including removal of cycle track barriers/delineator posts and anchor bolts with restoration of resulting voids; milling and overlaying asphalt within curb faces to a maximum treatment depth of ≤ 4 inches; grinding/removing existing pavement markings within concrete bus laybys; removing bicycle signal faces and retiming/rephasing traffic signals as needed; removing bicycle route signage and installing new signage (and striping transitions) at the north and south project limits to safely transition bicyclists; and restriping the corridor to a typical cross-section of two northbound lanes and two southbound lanes (plus turn lanes where feasible), with crosswalk markings replaced in-kind on asphalt and new stop bars and lane-use arrows installed at intersection approaches as warranted.

The impacts of this project were previously reviewed and documented in a CE Form signed on February 23, 2026. The February CE Form considered the impacts of the project based on the assumption that it would start on or around that date. Since that form was signed, the project was delayed. The February CE Form assumed that all work would be completed prior to the National Cherry Blossom Festival, or would not interfere with the National Cherry Blossom Festival, which has already begun and will run through April 12, 2026. The project is now anticipated to begin on April 23, 2026, and to conclude by May 14, 2026. In this CE Form, the NPS is reanalyzing the impacts of the project given this revised window for work activity, which will occur in advance of a number of special events celebrating the 250th birthday of the United States, beginning in mid-May 2026 and lasting through August 2026, at which the NPS expects significant attendance.

Shifting work from the pre–National Cherry Blossom Festival window assumed in the February CE Form to an April 23–May 14, 2026  work window changes the impact context primarily by moving the work into the early peak visitor/event season and immediately ahead of the planned U.S. Semiquincentennial (250th) special events period (mid-May through August 2026). With the Festival underway (through April 12, 2026), the revised window avoids direct overlap with Cherry Blossom Festival events, but it increases the likelihood of higher baseline traffic volumes, tour activity, and pedestrian/bicycle demand than typical shoulder-season conditions. The revised schedule also tightens the buffer between completion and the start of major 250th-related events. The NPS will work with the Federal Highways Administration to mitigate impacts during this higher visitation period.

This proposed project supports implementation of Executive Order 14252, "Making the District of Columbia Safe and Beautiful," Secretarial Order 3428 "Making the District of Columbia Safe and Beautiful," and Executive Order 14189 "Celebrating America's 250th Birthday." The upcoming events celebrating America's 250th birthday (beginning in mid-May and lasting through August 2026) will bring large numbers of Americans and international visitors to the National Mall, parks in the National Capital Region, and Washington, D.C., in general.

The proposed project will also improve the visual quality of these prominent federal public spaces through removal of roadway appurtenances and restoration of a standardized, maintainable corridor configuration. Improvements made in anticipation of nationally significant events celebrating the America's 250th birthday will also benefit future visitors to the National Mall and Memorial Parks.

**Project Location:**
**County, State:** District of Columbia, DC

**Mitigation(s):**
There are no required mitigations identified.

**CE Citation:** 516 Departmental Manual 1, DOI NEPA Handbook, Appendix 2, 16.1(G)(5) (Feb. 2026).
Modernization of a highway by resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes (including parking, weaving, turning, and climbing lanes), if the actions meet the constraints below. Actions may not be processed as CEs if they involve:

1. An acquisition of more than a minor amount of right-of-way or that would result in any residential or non-residential displacements;
2. An action that needs a bridge permit from the U.S. Coast Guard, or an action that does not meet the terms and conditions of a U.S. Army Corps of Engineers nationwide or general permit under section 404 of the Clean Water Act and/or section 10 of the Rivers and Harbors Act of 1899;
3. A finding of "adverse effect" to historic properties under the National Historic Preservation Act, the use of a resource protected under 23 U.S.C. 138 or 49 U.S.C. 303 (section 4(f)) except for actions resulting in *de minimis* impacts, or a finding of "may affect, likely to adversely affect" threatened or endangered species or critical habitat under the Endangered Species Act; *de minimis* impacts, or a finding of "may affect, likely to adversely affect" threatened or endangered species or critical habitat under the Endangered Species Act;
4. Construction of temporary access or the closure of existing road, bridge, or ramps that would result in major traffic disruptions;
5. Changes in access control;
6. A floodplain encroachment other than functionally dependent uses (e.g., bridges, wetlands) or actions that facilitate open space use (e.g., recreational trails, bicycle and pedestrian paths); or construction activities in, across or adjacent to a river component designated or proposed for inclusion in the National System of Wild and Scenic Rivers.

Actions may be designated as CEs only after documentation demonstrates that the specific conditions or criteria for these CEs are satisfied, and that significant environmental effects will not result. If the action triggers a constraint (1)-(6) above, the CE can still be applied if the documentation demonstrates that the action fits within the CE and significant environmental effects will not result.

**CE Justification:** Based on the limited scope, confined limits of disturbance, and use of standard resurfacing and traffic-control methods, the action fits DOI CE 16.1(G)(5), formerly numbered as 12.6(13), and, as documented below, does not trigger any of the constraints of the CE such that significant environmental effects would be expected.

1. **An acquisition of more than a minor amount of right-of-way or that would result in any residential or non-residential displacements**

   All work is confined to the existing paved roadway area within existing curbs. No new right-of-way is needed and no acquisitions are proposed. The action does not require relocation of residences or businesses and does not change adjacent land uses.

2. **An action that needs a bridge permit from the U.S. Coast Guard, or an action that does not meet the terms and conditions of a U.S. Army Corps of Engineers nationwide or general permit under section 404 of the Clean Water Act and/or section 10 of the Rivers and Harbors Act of 1899**

   The action is roadway surface work and traffic-control equipment removal/adjustment within an existing roadway, with no bridge work and no in-water work. No dredge/fill discharge to waters of the U.S. is proposed and no structures are proposed in navigable waters.

3. **A finding of "adverse effect" to historic properties under the NHPA, the use of a resource protected Section 4(f)) except for actions resulting in de minimis impacts, or a finding of "may affect, likely to adversely affect" threatened or endangered species or critical habitat under the Endangered Species Act**

   NHPA - The project removes appurtenant features (barriers, delineators, bicycle signal faces, bicycle signs), restores the roadway surface, and restripes within the existing paved roadway. As detailed in the February 23, 2026 "Assessment of Actions Having an Effect on Historic Properties," the project will have "No Adverse Effect" on historic properties.

Section 4(f) - The action is within an existing transportation facility and does not convert parkland to transportation use; it changes lane configuration/operations on existing roadway pavement.

ESA - The action is within an existing transportation facility and does not convert existing habitat to transportation use. As a resurfacing/striping/signals action within existing roadway, there are no effects on threatened or endangered species or critical habitat.

4. **Construction of temporary access or the closure of existing road, bridge, or ramps that would result in major traffic disruptions**

The proposed action is confined to the existing roadway prism and will be implemented using standard paving and traffic-control methods (lane shifts, short-duration lane closures, and/or off-peak work) to maintain traffic circulation and emergency access through the corridor. Any temporary restrictions needed to complete resurfacing, striping, and signal work would be limited in duration and extent, would not require construction of temporary access routes, and would not involve closure of a road, bridge, or ramp in a manner that causes major traffic disruptions.

5. **Changes in access control**

The action does not introduce access control features such as new medians restricting turning movements, new gates, restricted-access designation, or conversion to controlled-access facility. It is operational striping/signal timing within the existing roadway.

6. **A floodplain encroachment**

The work is confined to an existing roadway prism. If any portion of the roadway is within a mapped floodplain, resurfacing within the existing footprint is typically treated as maintenance of an existing functionally dependent facility (transportation infrastructure) and does not create a new encroachment. No work is proposed in or across a designated/proposed Wild & Scenic River segment.

**Extraordinary Circumstances:**

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| **A.** Have significant impacts on public health or safety? | No | Removal of the separated bicycle facility will have an operational effect on bicyclists, including a change in facility type and user experience on a corridor that has been documented as carrying more than 2,000 bicycle users per day. However, this change will not result in significant impacts on public health or safety because cyclists will continue to have the choice to ride on either the roadway or the adjacent sidewalks, consistent with Section 3(i)(i)(A) of the National Mall and Memorial Parks Superintendent's Compendium (Jan. 13, 2026), available at https://www.nps.gov/nama/learn/management/superintendent-s-compendium.htm. As a result, cyclists will continue to have a route to travel through the project area outside the motor vehicle roadway. Cyclists who prefer to ride in the roadway instead of on the sidewalk will be able to do so.<br><br>The proposed project will not have other significant impacts on public health or safety because it is confined to the existing roadway prism and consists of resurfacing/rehabilitation and traffic-control changes (striping, signing, and signal adjustments) without expanding the transportation footprint or inducing land use change. The project includes traffic-control measures, clear transition signing/markings at the project termini, and coordination with the local transportation agency to maintain bicycle accommodation and manage operational transitions. With these measures, the action is not expected to cause significant environmental impacts or constitute an extraordinary circumstance. |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| | | The project does not eliminate bicycle travel in the corridor; it changes the facility type. NPS will implement transition signing/markings and will monitor operations after implementation and adjust striping/signals as warranted to address observed operational issues. |
| **B.** Have significant impacts on such natural resources and unique geographic characteristics as historic or cultural resources; park, recreation or refuge lands; wilderness areas; wild or scenic rivers; national natural landmarks; sole or principal drinking water aquifers; prime farmlands; wetlands; floodplains; national monuments; migratory birds; and other ecologically significant or critical areas? | No | The proposed work is confined to the existing curb-to-curb roadway prism and consists of removing existing cycle track appurtenances (barriers/delineators and anchor bolts), resurfacing (mill-and-overlay, with a stated maximum treatment depth), restriping, and related signal/sign removals/adjustments. Because the project does not expand the roadway footprint, does not involve new ground disturbance outside the paved section, and does not propose in-water work, effects to the listed resource categories are expected to be temporary, localized, and not significant. |
| **C.** Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks? | No | These are standard, well-understood roadway activities with predictable, short-term effects (temporary work noise, dust, traffic control, and material handling) and established best management practices. The action does not introduce new technology, new access routes, in-water work, excavation beyond the stated pavement treatment depth, or expansion into undeveloped areas that would create unknown risk pathways. The action will revert the roadway to pre-2021 conditions. |
| **D.** Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects? | No | It does not approve, commit, or predetermine any broader transportation program, corridor-wide redesign, roadway expansion, or land use change. Any future transportation or multimodal changes in the memorial core would require their own purpose-and-need, design development, and separate compliance review based on the specifics of those proposals and their potential effects. |
| **E.** Have a direct relationship to other actions that implicate potentially significant environmental effects? | No | While the project is being coordinated with routine roadway preservation and near-term work scheduling in the vicinity, those activities are of the same general type (pavement rehabilitation/traffic control) and do not constitute a larger connected action that would trigger or depend on a separate action with potentially significant effects. The removal and resurfacing action has independent utility and does not rely on, commit the agency to, or predetermine any broader transportation program, footprint expansion, or land-use change. |
| **F.** Have significant impacts on properties listed, or eligible for listing, on the National Register of Historic Places as determined by the bureau? | No | The project occurs in a historically sensitive setting; however, it is confined to the existing curb-to-curb roadway prism and consists of removal of existing cycle track appurtenances with surface restoration, mill-and-overlay resurfacing (limited to the specified maximum depth), restriping, and minor signal/sign adjustments. The project will restore the roadway to its previous condition before the cycle track was installed in 2021. The action does not expand the roadway footprint or disturb areas outside the existing paved facility. Section 106 documentation is completed for this undertaking; with a finding of no adverse effect. |
| **G.** Have significant impacts on species listed, or proposed to be listed, on the List of Endangered or Threatened Species or have | No | The project does not include vegetation clearing, tree removal, habitat conversion, excavation outside the paved roadway section, or in-water work. Because effects are limited to temporary disturbances (noise, equipment presence, localized dust) within an already developed roadway, the action is not |

| If implemented, would the proposal... | Yes/No | Explanation |
|---|---|---|
| significant impacts on designated Critical Habitat for these species? | | anticipated to adversely affect listed/proposed species or designated critical habitat, and significant impacts are not expected. |
| **H.** Significantly limit access to and ceremonial use of Indian sacred sites on Federal lands by Indian religious practitioners or significantly adversely affect the physical integrity of such sacred sites? | No | The project does not expand the transportation footprint, does not involve ground disturbance outside the paved roadway, and does not change public access to adjacent park areas beyond short-term, managed construction traffic control. Because the action occurs within an already developed roadway corridor and does not affect natural features, landscape elements, or access routes associated with ceremonial practice, it is not expected to limit access to or ceremonial use of Indian sacred sites, nor to adversely affect the physical integrity of such sites. |
| **I.** Contribute to potentially significant effects resulting from the introduction, continued existence, or spread of noxious weeds or non-native invasive species known to occur in the area or from other actions that promote the introduction, growth, or expansion of the range of such species (Federal Noxious Weed Control Act)? | No | The project does not include vegetation clearing, soil disturbance in landscaped areas, off-road staging, or import of fill/soil to vegetated areas—activities that typically create pathways for invasive plant introduction. Because disturbance is limited to paved surfaces and work areas can be kept on asphalt/concrete, the action is not expected to introduce, spread, or expand noxious weeds or non-native invasive species, and potentially significant effects are not anticipated. |

**Decision: I find that the action fits within the categorical exclusion(s) above. Therefore, I am categorically excluding the described project from further NEPA analysis. No extraordinary circumstances apply.**

**Superintendent Signature:** *Kevin J. Griess*
SUPERINTENDENT
National Mall and Memorial Parks
National Park Service

Date: 2026.03.31
16:42:03 -04'00'

**Date:** _____

Kevin Griess