**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WASHINGTON AREA BICYCLIST
ASSOCIATION, INC.,

               Plaintiff,

v.

DOUGLAS BURGUM, in his official
capacity as Secretary of the Interior, *et al.*,

               Defendants.

Case No. 1:26-cv-988-ABJ

**DEFENDANTS' COMBINED MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
AND MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF
<u>DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 3

    I.      Factual Background ..................................................................................... 3

          A.      The 15th Street Cycle Track ......................................................... 4

          B.      Initial Decision to Remove the Cycle Track ............................... 4

          C.      Reconsideration in Light of Changed Circumstances and Decision to Proceed With Removal on April 23. ........................................ 5

          D.      DDOT's Post-Implementation Analysis of the Cycle Track ....... 7

    II.     Procedural Background.................................................................................. 9

LEGAL STANDARD .................................................................................................. 10

ARGUMENT ...............................................................................................................11

    I.      The Court Lacks Subject-Matter Jurisdiction Over WABA's Complaint. .............11

          A.      WABA's Claims are Moot Because Setting Aside the Agencies' Original Decision Would Not Afford Any Meaningful Relief.................. 12

          B.      The Court Does Not Have Supervisory Control in the Absence of a Article III Case or Controversy................................................................ 14

          C.      WABA's Allegations Do Not Show a Probability of Injury and Fail to Demonstrate Standing.............................................................................. 15

    II.     WABA is Not Entitled to Injunctive Relief Because It Has Not Shown Any of Its Members Will Suffer an Irreparable Injury Absent that Relief. .................. 17

          A.      WABA Has Not Proven Any WABA Member Will Suffer Certain and Imminent Injury.................................................................................. 17

          B.      WABA Fails to Substantiate Any Other Claim of Irreparable Harm. ........ 19

    III.    Defendants are Entitled to Summary Judgment....................................................... 19

          A.      WABA Has Not Challenged Final Agency Action. ................................. 20

B.    The Administrative Record Demonstrates that the Agencies Satisfied All of Their Statutory Obligations. ........................................................ 21

    1.    The Agencies Complied with the APA. ........................................ 21

        a.    NPS Examined the Relevant Data and Adequately Explained the Decision to Remove the Cycle Track and Restore the Original Lane Configuration. .................. 22

        b.    WABA's Complaint Does Not Allege That the Roadwork Project Itself Violates the APA ....................... 23

        c.    The Explanations in the New Decision Documents are Properly Before the Court. ......................................... 23

    2.    NPS and FHWA Complied with NEPA. ...................................... 24

        a.    Categorical Exclusions Under NEPA ............................... 25

        b.  The Agencies' use of a CE to analyze the impacts of the removal of the Cycle Track, is reasonable and is entitled to substantial deference. ...................................... 25

            i.    Subsection (26) Applies to the Removal of Traffic Barriers. ...................................................... 26

            ii.    NPS Reasonably Determined That No Extraordinary Circumstances are Present. ............ 27

            iii.    The action will not have significant impacts on travel patterns. ................................................... 29

            iv.    WABA's Opposition to the Project Does Not Make it "Controversial" Under NEPA. ................. 29

        c.    FHWA's Use of a CE for its part of the project was reasonable. ........................................................................ 31

    3.    The Agencies Had no Obligation to Engage in Consultation under the National Capital Planning Act. ..................................... 31

    4.    NPS Complied with the Organic Act. ........................................... 32

        a.    Statutory Background ....................................................... 33

        b.    NPS Reasonably Explained its Determination that the Project Would Not Impair Park Resources. ...................... 33

# TABLE OF AUTHORITIES

**Cases**

*Alliance for Retired Americans v. Bessent*,
770 F. Supp. 3d 79 (D.D.C. 2025) ................................................................................ 2

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) ................................................................................. 19

*Am. Bioscience, Inc. v. Thompson*,
269 F.3d 1077 (D.C. Cir. 2001) ............................................................................... 10

*Am. Meat Inst. v U.S. Dep't of Agric.*,
968 F. Supp. 2d 38 (D.D.C. 2013) ........................................................................... 17

*Am. Wild Horse Preservation Campaign v. Salazar*,
800 F. Supp. 2d 270 (D.D.C. 2011) ........................................................ 11, 12, 14, 15

*Arizonans for Official English v. Arizona*,
520 U.S. 43 (1997) ................................................................................................... 11

*Back Country Horsemen of Am. v. Johanns*,
424 F. Supp. 2d 89 (D.D.C. 2006) ........................................................................... 26

*Bennett v. Spear*,
520 U.S. 154 (1997) ................................................................................................. 20

*Bicycle Trails Council of Marin v. Babbitt*,
82 F.3d 1445 (9th Cir. 1996) .................................................................................... 33

*Clevinger v. Advocacy Holdings, Inc.*,
134 F.4th 1230 (D.C. Cir. 2025) ................................................................................ 2

*Cloud Found., Inc. v. Salazar*,
999 F. Supp. 2d 117 (D.D.C. 2013) .......................................................................... 25

*Colbert v. Dist. of Columbia*,
78 F. Supp. 3d 1 (D.D.C. 2015) ............................................................................... 15

*Council for Urological Ints. v. Burwell*,
790 F.3d 212 (D.C. Cir. 2015) ................................................................................. 24

*CTS Corp. v. EPA*,
759 F.3d 52 (D.C. Cir. 2014) ................................................................................... 10

*Daingerfield Island Protective Soc. v. Babbitt*,
40 F.3d 442 (D.C. Cir. 1994) ................................................................................... 33

*Davis v. Latschar*,
202 F.3d 359 (D.C. Cir. 2000) .............................................................................. 3, 33

iii

*Delaware Riverkeeper Network v. Pennsyvlania Dep't of Transp.*,
No. CV 18-4508, 2020 WL 4937263 (E.D. Pa. Aug. 21, 2020) ............................................. 30

*eBay, Inc. v. MercExchange LLC*,
547 U.S. 388 (2006) ......................................................................................................2, 11

*Fisheries Survival Fund v. Jewell*,
236 F. Supp. 3d 332 (D.D.C. 2017) ......................................................................... 19

*Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Eng'rs*,
374 F. Supp. 2d 1116 (S.D. Fla. 2005) ................................................................... 26

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ..................................................................... 2, 16, 18

*Foretich v. United States*,
351 F.3d 1198 (D. C. Cir. 2003) ..............................................................................11

*Front Range Equine Rescue v. Vilsack*,
753 F. Supp. 3d 6 (D.D.C. 2024) ..................................................................... 10, 30

*Greater Yellowstone Coal. v. Kempthorne*,
577 F. Supp. 2d 183 (D.D.C. 2008) ....................................................................... 34

*Honig v. Doe*,
484 U.S. 305 (1988) ..................................................................................................11

*Hudson v. American Federation  of Government  Employees*,
No. 17-cv-2543-KBJ, 2018 WL 1143172 (D.D.C. Mar. 2, 2018) ..................................... 14, 15

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977) ................................................................................................ 15

*Karst Env't Educ. & Prot., Inc. v. EPA*,
475 F.3d 1291 (D.C. Cir. 2007) ..............................................................................11

*Loc. 814, Int'l Bhd. of Teamsters v. NLRB*,
546 F.2d 989 (D.C. Cir. 1976) ............................................................................... 24

*Marcum v. Salazar*,
694 F.3d 123 (D.C. Cir. 2012) ............................................................................ 2, 20

*McBryde v. Committee to Review Circuit Council Conduct*,
264 F.3d 52 (D.C. Cir. 2001) ............................................................................. 1, 12

*Monsanto v. Geertsen Seed Farms, Inc.*,
561 U.S. 139 (2010) ................................................................................................ 19

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ............................................................................................ 10, 21

*NAACP Erie Unit 2262 v. Fed. Highway Admin.*,
648 F. Supp. 3d 576 (W.D. Pa. 2022) ................................................................... 29

*Nat'l Parks Conservation Ass'n v. Semonite*,
  282 F. Supp. 3d 284 (D.D.C. 2017) ................................................................. 18

*Partners in Forestry Co-op. v. U.S. Forest Serv.*,
  638 F. App'x 456 (6th Cir. 2015) .................................................................... 30

*Pennsylvania v. DeVos*,
  480 F. Supp. 3d 47 (D.D.C. 2020) .....................................................................11

*Perry Capital, LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017) ......................................................................... 19

*Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) ....................................................................... 16

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. FHWA*,
  884 F. Supp. 876 (D.N.J.) ............................................................................... 27

*R.L. Vallee, Inc. v. Vt. Agency of Transp.*,
  No. 18-CV-104, 2020 WL 4689788 (D. Vt. July 8, 2020)................................. 26, 29

*Reed v. Salazar*,
  744 F. Supp. 2d 98 (D.D.C. 2010) ................................................................... 25

*Rucker v. Willis*,
  484 F.2d 158 (4th Cir. 1973)............................................................................ 30

*S. Airways Express, LLC v. U.S. Dep't of Transp.*,
  159 F.4th 50 (D.C. Cir. 2025) .......................................................................... 23

*Safari Club Int'l v. Jewell*,
  47 F. Supp. 3d 29 (D.D.C. 2014) ..................................................................... 18

*Safari Club Int'l v. Salazar*,
  852 F. Supp. 2d 102 (D.D.C.2012) ................................................................... 18

*SEC v. Chenery Corp.*,
  332 U.S. 194 (1947)......................................................................................... 23

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
  605 U.S. 168 (2025).......................................................................... 3, 23, 25, 28

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)...........................................................................................11

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)........................................................................................... 10

*Terbush v. United States*,
  516 F.3d 1125 (9th Cir. 2008).......................................................................... 34

*West v. Sec'y of Dep't of Transp.*,
  206 F.3d 920 (9th Cir. 2000)............................................................................ 29

v

*Winter v. Nat. Res. Def. Council*,
   555 U.S. 7 (2008) ...............................................................................................2, 11

*\*Wisc. Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985) .....................................................................11, 17, 18

**Statutes**

40 U.S.C. § 8701 ......................................................................................................... 3

40 U.S.C. § 8721 ....................................................................................................... 31

40 U.S.C. § 8722(a) .................................................................................................. 31

40 U.S.C. § 8722(b)(1) ...................................................................................... 3, 4, 31

42 U.S.C. § 4321 ......................................................................................................... 3

42 U.S.C. § 4332(2)(C) ............................................................................................. 25

42 U.S.C. § 4332(C)(v) ............................................................................................. 26

42 U.S.C. § 4336c ...................................................................................................... 25

5 U.S.C. § 552 ........................................................................................................... 26

5 U.S.C. § 702 ........................................................................................................... 13

5 U.S.C. § 704 ................................................................................................ 13, 19, 20

5 U.S.C. § 705 ...................................................................................................9, 11, 17

5 U.S.C. § 706(2)(A) ........................................................................................... 10, 21

5 U.S.C. §§ 702-706 .................................................................................................... 2

5 U.S.C. 706(2) .................................................................................................... 10, 24

54 U.S.C. § 100101 ..................................................................................................... 3

54 U.S.C. § 100101(a) ............................................................................................... 32

54 U.S.C. § 100101(b)(2) .......................................................................................... 33

**Rules**

Fed. R. Civ. P. 65(c) .................................................................................................. 35

**Regulations**

23 C.F.R. § 711.117(a) ................................................................................... 25, 28, 29

23 C.F.R. § 771.117(c)(26) ................................................................................. 26, 27

**Other Authorities**

Executive Order No. 14252 ................................................................................... 5, 22

**INTRODUCTION**

Plaintiff Washington Area Bicyclist Association, Inc. ("WABA") seeks to enjoin the National Park Service ("NPS") and the Federal Highway Administration ("FHWA") from removing bicycle lanes (the "Cycle Track") on certain roadways in anticipation of the "America 250" celebrations this summer.  These events are expected to generate substantial public attendance and, in turn, significant vehicular traffic.  The agencies have decided to proceed with the project on April 23, 2026, so that it is completed before other major events on the National Mall start on May 16.  No injury that WABA has alleged, and no claim that it has pleaded, entitle WABA to the relief that it seeks.[1]

First, WABA's Complaint must be dismissed for lack of subject-matter jurisdiction. WABA's Complaint, filed March 23, 2026, has been overtaken by events, has not been amended or supplemented, and is therefore moot.  *See McBryde v. Committee to Review Circuit Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001).  WABA's Complaint challenges the agencies' initial decision, in February, to proceed with removal of the Cycle Track.  Dkt. 1, ¶ 32; NPS-AR-001145. But the agencies revisited that earlier decision, and after reconsideration, chose instead to proceed on April 23, a decision NPS memorialized on March 31, 2026.  NPS-AR-001364; NPS-AR-001369.  The February decision is no longer the operative action.  And any errors WABA identified in the now-inoperable action have been overtaken by events.  For both of these reasons, setting aside the February decision, as WABA requests, would provide no meaningful relief, rendering WABA's claims moot.

---

[1] On April 2, 2026, the Court issued a Minute Order consolidating the proceedings on WABA's motion for a preliminary injunction (Dkt. 9) with proceedings on the merits, to be resolved by cross-motions for summary judgment.  Per the Minute Order, Defendants are submitting a single memorandum to oppose WABA's motion (now also deemed a motion for summary judgment) and to support Defendants' cross-motion for summary judgment.

If this case is not moot, WABA's motion for injunctive relief should be denied.  A permanent injunction, like a preliminary injunction, requires a demonstration that the plaintiff will be irreparably injured absent injunctive relief.  *eBay, Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006); *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The D.C. Circuit has a "high standard for irreparable injury."  *Clevinger v. Advocacy Holdings, Inc.*, 134 F.4th 1230, 1234 (D.C. Cir. 2025) (citation omitted).  WABA's asserted injuries come up short.  WABA's allegation that its members face an increased risk of injury is not even sufficient to demonstrate  Article III standing, *see Food & Water Watch*, *Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015), much less an irreparable injury justifying an injunctive relief.  *See Alliance for Retired Americans v. Bessent*, 770 F. Supp. 3d 79, 109 (D.D.C. 2025).  Moreover, WABA's contentions about risk of injury are unsupported.  The statistics it cites are based on flawed "before" and "after" analysis by the D.C. Department of Transportation ("DDOT"), which improperly attributes traffic and safety improvements to the Cycle Track, when due to pandemic-related restrictions and telework policies, "there were simply fewer cars on the road," NPS-AR-001358.  In any event, WABA members can avoid any perceived increased risk of injury by selecting alternative routes or modes of transit. Avoidable injury is not irreparable harm.  Therefore, WABA's motion for injunctive relief should be denied without analysis of the merits or other factors.  *Clevinger*, 134 F.th at 1236.

On the merits, WABA's claims also fail.  WABA cannot obtain relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702-706, because the agency action that WABA challenges in its Complaint—the February decision—was rendered non-final when the agencies decided to reconsider it after the project delay.  *See Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012).  Even if the Court were to construe WABA's Complaint as reaching the agencies' March 31 decision (and there is no basis for the Court to do so), Defendants are entitled

2

to summary judgment because NPS and FHWA complied with all applicable statutory requirements under the APA, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, the National Capital Planning Act, 40 U.S.C. § 8701, *et seq.*; and the NPS Organic Act, 54 U.S.C. § 100101. The agencies' determination that removing the Cycle Track and restoring the original lane configuration would not cause significant impacts, or by extension, impairment of National Park resources, are entitled to substantial deference. *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025); *Davis v. Latschar*, 202 F.3d 359, 365 (D.C. Cir. 2000). Further, contrary to WABA's allegations, the agencies had no obligation to consult with the National Capital Planning Commission under 40 U.S.C. § 8722(b)(1), as the planning director for that entity has confirmed. NPS-AR-00197.

This case is a straightforward one: WABA's Complaint should be dismissed as moot. If the Complaint is not dismissed, WABA's motion for summary judgment and injunctive relief should be denied, and Defendants' cross-motion for summary judgment should be granted, for the reasons set forth below.

## BACKGROUND

### I.      Factual Background

The National Mall is the "premier civic and symbolic state in our nation," located in the middle of Washington D.C. NPS-AR-000225. The National Mall stretches west from the U.S. Capitol to the Potomac River, and north from the Thomas Jefferson Memorial to Constitution Avenue. NPS-AR-000227. Areas surrounding the National Mall serve as "a major vehicular gateway" to Washington D.C. NPS-AR-000247. Until late 2021, the western-most lane of traffic on 15th Street traversing the National Mall was a lane for vehicular traffic.

3

A.      The 15th Street Cycle Track

In October 2020, NPS and DDOT initiated a project to replace this vehicular lane with a bicycle lane. NPS-AR-000819. To document its compliance with NEPA, NPS completed a categorical exclusion documentation form ("CE form") for the project. NPS-AR-000543- NPS-AR-000545. NPS applied categorical exclusion C.18 applying to construction of minor structures, including small, improved parking lots, in previously disturbed areas. NPS-AR-000544. Because the project would involve construction — the installation of dividers and new granite curbs and reconfiguration of existing curbs and bus stops[2] — NPS also consulted with the National Capital Planning Commission ("Planning Commission") before preparing its construction plans, pursuant to 40 U.S.C. § 8722(b)(1). *See* NPS-AR-000842; *see, e.g.*, NPS-AR-000886 – 898 (construction plans).

Construction of the bike lanes was completed in the fall of 2021. NPS-AR-001369. At that time, telework policies related to the COVID pandemic were in force in the federal government. There were fewer cars on the road, and traffic patterns changed. *See* NPS-AR-0001358. Traffic in the District declined and remained suppressed into 2025. On January 20, 2025, President Trump issued an Executive Order directing federal agencies to curtail or eliminate telework programs for most employees.

B.      Initial Decision to Remove the Cycle Track

This year, in anticipation of the Cherry Blossom Festival and the events planned for the America 250 anniversary celebration, NPS and FHWA began preparations to remove the Cycle Track and restore the original lane configuration on the affected roadways. The project would

---

[2] The Planning Commission noted that the vertical plastic bollards typically associated with bicycle lanes "are not in keeping with the design aesthetic and quality of the National Mall." NPS-AR-000844. To mitigate this issue, NPS proposed instead to install wheel stops, and later a permanent granite curb. *Id.*

4

further the objectives of Executive Order No. 14252, Making the District of Columbia Safe and Beautiful, directing the Secretary of the Interior, in consultation with other agency heads, to "develop and implement a program to beautify and make safe and prosperous the District of Columbia."

On February 23, 2026, NPS completed a CE form to document its compliance with NEPA and also documented its compliance with Section 106 of the National Historic Preservation Act. NPS-AR-001150-1160. Just as it found in 2021, when it approved the installation of the Cycle Track, NPS concluded that the removal of the Cycle Track would not have significant impacts requiring extensive environmental analysis.  On February 27, 2026, FHWA completed a CE for its participation in the project.  FHWA-AR_001.

**C.      Reconsideration in Light of Changed Circumstances and Decision to Proceed With Removal on April 23.**

The removal project did not begin as planned.  NPS and FHWA prepared their respective NEPA analyses in February, and had work started then, the project could have been completed prior to the Cherry Blossom Festival.  But work did not start then.  By the time the agencies were ready to proceed, in mid-March, cherry blossom "peak bloom" was two weeks away, and the roadwork could have interfered with movement around the area. NPS-AR-001364.  *See* NPS-AR-001357 (showing projected "total road closure" around the Tidal Basin are).  The agencies decided to delay the project.  WABA's lawsuit was filed while they were reconsidering it.

On March 31, NPS decided to proceed with the project on a new timeline: it will begin removal work on April 23.  In making this decision, NPS issued a Decision Memorandum: 15th Street Cycle Track Removal and Road Repaving Project National Mall and Memorial Parks*,* NPS-AR-0001369 ("Decision Memo"), and Categorical Exclusion Documentation Form, NPS-AR-

0001366 ("March 31 CE"). The same day FHWA completed a Re-Evaluation of its prior CE form, taking into consideration NPS's March 31 CE. NPS-AR-001362.

The decision to proceed with removal work on April 23 is based on two considerations. First, there are numerous events planned for this summer to celebrate the semiquincentennial anniversary of this country's founding ("America 250"). Those events will take place in and around the National Mall and Tidal Basin area and are expected to significantly increase traffic in the area. NPS-AR-0001369. They include an Ultimate Fighting Championship match on the South Lawn of the White House, along Pennsylvania Avenue on June 14; a large firework celebration on July 4th; and an Indy Car race around the National Mall and downtown core on August 22-23. NPS-AR-001370- 1371. In order to facilitate the significant public attendance at these events, NPS, in consultation with FWHA, decided to remove the Cycle Track to provide additional capacity for car travel in the downtown area. NPS-AR-001370.

The second scheduling consideration is the start date. The roadwork must be finished before events occurring before the America 250 events, in particular the Interfaith Day of Prayer events on May 16 and 17, which is itself expected to attract an estimated six-figure attendance on the National Mall, and coincide with the George Washington University commencement at the Washington Monument, and the National Peace Officers' Service on the Capitol Grounds. NPS-AR-001370. Not long after these events, there will be public viewing areas staged on the National Mall to watch the World Cup. *Id.* The roadwork is expected to take three weeks. NPS-AR-001369. If it starts after these events, the roadwork would still be ongoing when the America 250 Events begin. Thus, NPS, in consultation with FHWA, decided that work would commence on April 23. *Id.*

6

### D.    DDOT's Post-Implementation Analysis of the Cycle Track

Many of WABA's arguments on the merits and in support of injunctive relief are premised on statistics on "Post-Implementation Analysis" for the Cycle Track prepared by DDOT.  *See, e.g.*, Dkt. 1, ¶¶ 28-31; Mem. 23; NPS-AR-001297.[3]  FHWA, the federal agency with expertise in traffic statistics, reviewed the DDOT analysis and found it had "significant methodological flaws."  NPS-AR-001358.  One of those significant flaws is detailed here, as important context for what follows.

DDOT's conclusions about the benefits of the Cycle Track are based on a "before" and "after" analysis.  *See* NPS-AR-001309.  As FHWA notes, a before-and-after comparison is inherently unreliable because factors unrelated to the action being evaluated may influence trends in the data.  *See* NPS-AR-001358 (before and after study designs "have many potential threats").  DDOT did not control for those external factors and appears to acknowledge that one such factor in particular—namely, the pandemic-driven shift to telework—limits the value of its own conclusions.

First, DDOT defined the "before" period as 2017-2019.  DDOT did not include 2020 in this period, even though it pre-dated the installation of the Cycle Track, because "[t]he COVID-19 pandemic and related lockdowns caused massive changes in typical traffic patterns, crash rates, commuter flows, and driver behavior nationwide" and " [t]hree quarters of all workers experienced some disruption to their pre-pandemic commute patterns."  NPS-AR-001311.  In other words, DDOT excluded 2020 from the "before" period in recognition that pandemic restrictions and telework resulted in less traffic and fewer crashes.  DDOT did not apply that insight to the "after" period of its analysis.

---

[3] The DDOT analysis and methodology documents were submitted as Attachments 6 and 7 to a declaration (Dkt. 9-2), which is in NPS's administrative record, along with WABA's other declarations.  Defendants' memorandum uses the administrative record citations.

DDOT used data from 2022 to 2025 to define "after" or "post-implementation" period. More precisely, DDOT collected data through October 2025, NPS-AR-001300, but then used different subsets of that data to conduct its comparisons. For example, DDOT conducted its before-and-after comparison of crash data based only on data through March 2025. NPS-AR-001303. DDOT did not explain why the remaining seven months of 2025 (after federal telework ended) were excluded from the comparison of crash data—even though DDOT used data from March to June 2025 to document increases in pedestrian and bicycle traffic, NPS-AR-001305. Similarly, the DDOT analysis states that travel times on the corridor decreased by 17% after the Cycle Track was installed, but the "after" (with CycleTrack) period was defined by two months in 2024, again, before federal telework ended. NPS-AR-001306. Consequently, DDOT's Post-Implementation Analysis, and WABA's materials relying upon it, improperly attribute safety and traffic improvements to the Cycle Track, when "there were simply fewer cars on the road" due to telework over the same period. NPS-AR-1358. *See also* NPS-AR-1359 (noting a citywide reduction in crashes using the same before and after periods). Put simply, the DDOT analysis treats correlation as causation.

Of course, the improperly designed before-and-after comparison is only one of the "significant methodological flaws" that FHWA documented. *See* NPS-AR-001358-60. Another is the use of raw crash data instead of crashes per vehicle-miles-traveled. (A chart in the DDOT analysis shows that the number of crashes per million vehicles actually *increased* after the Cycle Track was installed. NPS-AR-001302.) As FHWA notes, if DDOT had applied an appropriate methodology, "the lowering of the crash rate" that it attributed to the Cycle Track "is most likely all wiped out." NPS-AR-001360.

## II.    Procedural Background

At 10:29 a.m. on Sunday, March 22, WABA notified the Department of Justice that it intended to file a lawsuit and apply for a temporary restraining order to enjoin the removal of the Cycle Track. Shortly thereafter, government counsel informed WABA that work to remove the Cycle Track would not begin prior to March 30, making an emergency weekend filing with the Court unnecessary.

WABA filed its Complaint on March 23, 2026. Dkt. 1. The court held several scheduling conferences in which the agencies' plans for the project were discussed. As pleaded WABA's complaint alleged that the agencies had not engaged in any analysis under NEPA. In the interest of transparency, government counsel informed WABA about the February CE forms on March 25, prior to a court conference. NPS posted the February CE forms on its Park Planning web site later that day. (As discussed below, NPS had no legal obligation to do so.)

Over March 25 and March 26, the agencies were actively reviewing the project in light of the delay and determining whether additional analysis or documentation would be needed. With the agency review ongoing, government counsel conveyed that the agencies had committed not to begin work prior to April 23, 2026, that agency decisionmakers would not extend that commitment beyond April 23, and that the agencies expected to issue new documentation early in the week of March 30. *See* 3/26/26 Tr. 3:19-20.

On March 26, WABA filed its Motion for Preliminary Injunction ("Motion"), which seeks in the alternative a stay pursuant to 5 U.S.C. § 705, or a temporary restraining order.

On March 27, the Court ordered the agencies to produce the administrative record "for the project described in the [categorical] exclusion documents" by March 31. Minute Order of Mar. 27, 2026. Defendants produced and lodged administrative records for NPS and FHWA including the Decision Memo, March 30 CE, and Re-Evaluation, on March 31.

9

On April 2, the Court issued a Minute Order consolidating the proceedings on WABA's preliminary injunction with the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, and converting the briefing to one on cross-motions for summary judgment. As of the date of this filing, April 3, 2026, WABA has not amended its complaint. WABA's Motion is scheduled for hearing on April 9.

## **LEGAL STANDARD**

Before addressing the merits of a case, a court must assure itself of jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998). Even if there has been no motion brought under Rule 12 of the Federal Rules of Civil Procedure, a court may dismiss claims for lack of jurisdiction at any stage of the case, or sua sponte. *See, e.g.*, *Front Range Equine Rescue v. Vilsack*, 753 F. Supp. 3d 6 (D.D.C. 2024) (dismissing claims for lack of standing on parties' cross-motions for summary judgment in APA case).

In cases involving claims under the APA, and cross-motions for summary judgment, "the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Judicial review is limited to the administrative record. *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) ("a reviewing court should have before it neither more nor less information than did the agency when it made its decision." (internal quotation marks omitted). Under 5 U.S.C. 706(2), a court may only set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The scope of the court's review is "narrow, and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co*. ("*State Farm*"), 463 U.S. 29, 43 (1983). Judicial review of WABA's claims alleging violations of NEPA, the NCPA, and the NPS Organic Act is also

10

governed by this standard of review. *See Karst Env't Educ. & Prot., Inc. v. EPA*, 475 F.3d 1291, 1295 (D.C. Cir. 2007).

Irreparable injury is a required showing for injunctive relief or an administrative stay under 5 U.S.C. § 705. *See eBay*, 547 U.S. at 391; *Winter*, 555 U.S. at 20 (2008); *Pennsylvania v. DeVos*, 480 F. Supp. 3d 47, 58 (D.D.C. 2020). An irreparable injury is one that is "both certain and great," "actual and not theoretical," and "beyond remediation." *Wisc. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). In reviewing an allegation of irreparable injury, "the court must decide whether the harm will *in fact* occur." *Id.* The movant must also show that the harm will "directly result" from the challenged action. *Id.*

## ARGUMENT

## I.    The Court Lacks Subject-Matter Jurisdiction Over WABA's Complaint.

"Article III, section 2 of the Constitution permits federal courts to adjudicate only 'actual, ongoing controversies.'" *Am. Wild Horse Preservation Campaign v. Salazar* ("*Wild Horse Pres.*"), 800 F. Supp. 2d 270, 272 (D.D.C. 2011) (Berman Jackson, J.) (quoting *Honig v. Doe*, 484 U.S. 305, 317 (1988)). "This limitation gives rise to the doctrines of standing and mootness." *Id.* (quoting *Foretich v. United States,* 351 F.3d 1198, 1210 (D. C. Cir. 2003)).

To have standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). Mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 68, n. 22 (1997) (internal quotation marks and citations omitted)). "If events outrun the controversy such that the

11

court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Committee to Review Circuit Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001).

WABA's Complaint does not describe an "actual, ongoing controvers[y]" within the Court's jurisdiction, *Wild Horse Pres.*, 800 F. Supp. 2d at 272. WABA's Complaint challenges the agencies' initial decision, in February, to remove the Cycle Track, a decision WABA contends was not properly explained or analyzed. Dkt. 1, ¶ 32. NPS's Decision Memo, the March 31 CE, and FHWA's Re-Evaluation embody the operative decision, and they provide additional detail about the basis, purpose, and new schedule for the project. The agencies have also closely examined the traffic and safety statistics that animate WABA's claims. *See* NPS-AR-001358; NPS-AR-001371. Thus, events have "outrun the controversy" pleaded in WABA's Complaint, *McBryde*, 264 F.3d at 55, and the claims therein are now moot.

WABA's Complaint does not make any allegations about the new decision and thus does not establish this Court's jurisdiction to review it. WABA's allegations that the removal of the Cycle Track will cause its members to suffer physical injury are too attenuated to demonstrate standing to challenge the new decision in any event. On both of these grounds, WABA's Complaint should be dismissed for lack of subject-matter jurisdiction.

A.    **WABA's Claims are Moot Because Setting Aside the Agencies' Original Decision Would Not Afford Any Meaningful Relief.**

WABA's Complaint is moot because it does not challenge the operative decision to proceed with the removal of the Cycle Track, and the Decision Memo and accompanying NEPA documentation published by the agencies eliminate all of the alleged explanatory and procedural shortcomings in the decision that WABA did challenge. The Complaint must be dismissed because the Court "can grant no meaningful relief" on the basis of it, *McBryde*, 264 F.3d at 55.

12

WABA's Complaint alleges that federal agencies failed to follow required procedures and had no rational basis for their decision to remove the Cycle Track in February 2026. *See* Dkt. 1, at 11-20. WABA's allegations were promptly shown to be incorrect, two days later, when Defendants voluntarily posted the CE forms that NPS and FHWA had prepared in February. *See* 3/25/26 (p.m.) Tr. At the same time, Defendants advised WABA that the agencies were revisiting the documents based on the decision to delay the start of work. After completing their review, the agencies made a new decision to proceed with the removal of the Cycle Track on April 23, which they finalized and documented in the Decision Memo, March 31 CE, and Re-Evaluation. An order setting aside the earlier decision embodied in the February CE forms would afford WABA no meaningful relief. This demonstrates that WABA's Complaint is moot.

WABA's claims are also moot because WABA has obtained all the relief it realistically could have obtained on the basis of its Complaint: WABA alleged that the agencies failed to explain or justify their decision; the agencies have done so, in even more detail than before. WABA also alleged that the agencies failed to consider DDOT's traffic and safety analysis; they have examined it closely. *See* NPS-AR-001358; NPS-AR-001371. And WABA alleged that the agencies did not consider their obligation to consult with the National Capital Planning Commission; the agencies have obtained confirmation from the Planning Commission staff that no consultation is required. *See* NPS-AR-001197. The dispute described in the Complaint no longer exists.

To be sure, WABA may disagree with the agencies' new decision documents. But the place for such disagreement is in a new pleading. The Complaint presently before the Court is moot.

13

**B.**     **The Court Does Not Have Supervisory Control in the Absence of a Article III Case or Controversy.**

The APA is a limited waiver of sovereign immunity for a lawsuit challenging a final agency action.  *See* 5 U.S.C. §§ 702, 704.  Although the agencies have published documents and provided notice to WABA and the Court in the interest of transparency, WABA's invocation of the APA as to challenge the agencies' initial decision does not supply a jurisdictional hook for ongoing judicial supervision of all actions relating to the Cycle Track.  As the plaintiff, WABA has the burden to establish this Court's subject-matter jurisdiction to award the relief that it seeks, and WABA's Complaint does not establish the Court's jurisdiction over the decision documents issued after its Complaint and motion for summary judgment were filed.

WABA's position in this case is much like that of the plaintiffs in *Hudson v. American Federation of Government Employees*, No. 17-cv-2543-KBJ, 2018 WL 1143172 (D.D.C. Mar. 2, 2018).  There, the plaintiffs filed a complaint in 2017, alleging that they had been denied access to a union's e-mail system for distributing campaign literature.  *Id.* at *1.  In early 2018, the union provided plaintiffs with access to the system.  *Id.*  The plaintiffs argued that their claims were not moot because, in their view, the union's email system was inadequate.  *Id.*  The Court held that the suit could not proceed because "intervening events . . . have 'outrun the controversy' that Plaintiffs presented in their complaint, and at least some of the initial claims are now moot."  *Id.*  at *2 (citation omitted).  The plaintiffs were "sorely mistaken" in their apparent belief that the Court would "stand[ ] ready to act as referee and counselor with respect to the parties' perpetual renegotiations of their respective positions on various issues based on real-time developments in the factual landscape as this case proceeds."  *Id.*

This Court made a similar observation in *American Wild Horse Preservation Campaign v. Salazar*, 800 F. Supp. 2d 270.  In that case, the plaintiff organization challenged a Bureau of Land

14

Management decision to castrate wild horses for population-control purposes in two management areas in Wyoming. *Id.* at 271. While the case was pending, the agency issued a new decision, choosing instead to proceed with fertility control treatment for the mares. *Id.* at 272. The Court concluded that the case was moot because "the decision under review has no operative effect." *Id.* Although the plaintiff argued that the agency intended to approve castration for population control in other management areas in the near future, the Court declined "to serve as a special monitor, overseeing the agency's implementation of the Wild Free Horses and Burros Act indefinitely." *Id.* at 273.

Like the plaintiffs in these cases, WABA cannot proceed in this lawsuit on the basis of its March 23 Complaint, assuming the Court that will serve as a "special monitor," *Pres. Campaign*, 800 F. Supp. 2d at 272, or as "referee and counselor, " *Hudson*, 2018 WL 1143172, at *2, allowing them freely to challenge a decision that was made after the complaint was filed. The facts have "outrun the controversy" that was originally pleaded, *id.*, and it is "clear beyond cavil that a complaint's claims cannot be amended *implicitly*, through subsequent briefing or otherwise," *id.* (citing *Colbert v. Dist. of Columbia*, 78 F. Supp. 3d 1, 13 (D.D.C. 2015)). WABA's claims as pleaded in the March 23 Complaint are moot.

### C.      WABA's Allegations Do Not Show a Probability of Injury and Fail to Demonstrate Standing.

WABA's Complaint alleges that the organization is suing on behalf of its members.[4] It must therefore demonstrate, among other things, that its members would have standing to sue in their own right, including a showing of injury-in-fact, causation and redressability. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). WABA has not demonstrated that the

---

[4] WABA's motion suggests that WABA itself has suffered procedural injury, Mem. 38, but no such allegation is pleaded in the Complaint. *See* Dkt. 1, ¶¶ 39-41.

removal of the Cycle Track will cause, or be the but-for cause, of injury to any of WABA's members.

WABA alleges that its members will face an increased risk of injury if the Cycle Track is removed based on DDOT's methodologically flawed Post-Implementation Analysis, discussed above. When a plaintiff alleges injury-in-fact based on an increased risk of harm, the plaintiff must "show '*both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account.'" *Food & Water Watch*, 808 F.3d at 914 (quoting *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007)). A plaintiff cannot make this showing simply by alleging that the risk of injury has increased by 50%, or even 100%. If the *risk* of a crash increases from 1% to 2%, that is a 100% increase in the risk, but the probability of a crash (2%) still remains small.

WABA has not made either of the necessary showings here. Other than the DDOT analysis and an expert declaration relying upon that analysis, *see* Dkt. 9-11, WABA offers no support for its allegation that the removal of the Cycle Track will create "dramatically elevated risks of injury and death." Mem. 35. The DDOT analysis addresses the benefits of the Cycle Track, not the risks associated with removing it, and, given its many flaws, provides no evidentiary basis for a "*substantially* increased risk of harm," *Food & Water Watch*, 808 F.3d at 914. Moreover, even taking WABA's allegations about "elevated risk" at face value, WABA fails to show a "*substantial* probability" of injury to any of its members. WABA alleges that there were "more than 200 crashes" on this 15th Street from 2015 to 2020, and that a similar rate of crashes may return if the Cycle Track is removed. Mem. 36. This statistic, apparently drawn from a DDOT presentation, actually covers 15th Street up to H Street NW, including a substantial portion of the roadway outside the project area. NPS-AR-000625. But in any event, 200 crashes over a five-year period

16

averages out to less than one crash per week, and DDOT's raw crash data shows that the vast majority of crashes (about 75%) do not result in injury.  *See* NPS-AR-001302.  WABA cannot seriously contend that a rate of one crash per week reflects a probability of injury to any given cyclist, much less one of WABA's members.

To the extent WABA has standing in this case, its standing cannot be based on an increased risk of harm, and must instead rest on some other kind of injury.  But WABA's Complaint does not allege any other injury to WABA members.  Therefore, even if the Court concludes that WABA's Complaint is not moot, WABA's Complaint must be dismissed based on lack of standing.

## II.    WABA is Not Entitled to Injunctive Relief Because It Has Not Shown Any of Its Members Will Suffer an Irreparable Injury Absent that Relief.

If the Court does not dismiss WABA's Complaint, WABA's motion for injunctive relief (whether in the form of a preliminary injunction, permanent injunction, or stay under 5 U.S.C. § 705) should be denied.  WABA has failed to meet the D.C. Circuit's "high standard" for irreparable harm because it cannot show any certain or imminent injury to its members.  *Wisc. Gas*, 758 F.2d at 674.  WABA's statistics about the increased risk of injury are flawed and misleading, and WABA's members can avoid any increased risk of injury through their own actions.

### A.    WABA Has Not Proven Any WABA Member Will Suffer Certain and Imminent Injury.

WABA contends that the removal of the Cycle Track increases the risk of injury to bicyclists and, therefore, its members. This contention does not demonstrate irreparable injury.  In the D.C. Circuit, "[i]njunctive relief will not be granted against something merely feared as liable to occur at some indefinite time"; the plaintiff "must provide *proof* indicating that the harm is certain to occur in the near future." *Wisc. Gas Co.,* 758 F.2d at 674; *see also Am. Meat Inst. v U.S. Dep't of Agric.,* 968 F. Supp. 2d 38, 77 (D.D.C. 2013) ("[B]are allegations and fears about what

17

*may* happen in the future . . . are not sufficient to support a claim of irreparable injury," even where the plaintiff has "gathered a number of declarants who are willing to speculate about the potential impact" of the agency action."), *aff'd* 746 F.3d 1065 (D.C. Cir. 2014), *judgment reinstated after rehearing en banc*, 760 F.3d 18 (D.C. Cir. 2014).

The statistics proffered by WABA do not push its alleged injuries across the line from the speculative to the "certain." As explained above, WABA's increased-risk-of-harm allegations do not even suffice to establish Article III standing. *See Food & Water Watch*, 808 F.3d at 914. As noted, WABA has not demonstrated that injury to any member is even probable, as its cited statistics appear to show there was less than one crash per week on average prior to the installation of the Cycle Track. This is too thin a reed to support a finding of irreparable injury.

WABA also cannot escape the fact that the risk here is avoidable. WABA's declarants include educated professionals, such as the CEO of a non-profit, Dkt. 9-3; a senior fellow at a think tank, Dkt. 9-4; an airline pilot, Dkt. 9-5; and a partner at a communications firm, Dkt. 9-6.[5] These individuals are not without agency. They have a choice about where and when they will ride their bicycles. If they believe they face an increased risk of injury continuing to cycle on 15th Street, they can use a different route or alternative mode of transportation. Avoidable injury is not irreparable injury. *See Safari Club Int'l v. Salazar*, 852 F. Supp. 2d 102, 123 (D.D.C.2012). And the loss of some enjoyment in recreation and commuting is not an injury of the magnitude that justifies the entry of emergency injunctive relief. *See, e.g.*, *Safari Club Int'l v. Jewell*, 47 F. Supp. 3d 29, 34-35 (D.D.C. 2014).

---

[5] WABA's other declarants include a person who is retired, Dkt. 9-7, and a person who did not identify his profession, Dkt.9-8.

**B.      WABA Fails to Substantiate Any Other Claim of Irreparable Harm.**

WABA's one-sentence allegation that "procedural injury" also "supports a finding of irreparable harm" is unsubstantiated and should be disregarded.  *See* Mem. 39.  *See Wisc. Gas*, 758 F.2d at 674 (plaintiff must "substantiate" claim of irreparable harm).  Further, it is well-established that "procedural harm standing alone is insufficient to constitute irreparable harm." *Nat'l Parks Conservation Ass'n v. Semonite*, 282 F. Supp. 3d 284, 290 (D.D.C. 2017).  And any contention "that an injunction is generally the appropriate remedy for a NEPA violation" is "erroneous." *Monsanto v. Geertsen Seed Farms, Inc.*,  561 U.S. 139, 157 (2010).  *See also Allied-Signal, Inc. v. U.S.  Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993).  To establish irreparable harm on a procedural claim, the plaintiff "must allege some concrete injury beyond the procedural injury" and "must present sufficient evidence that the purported injury is certain, great, actual, imminent, and beyond remediation." *Fisheries Survival Fund v. Jewell*, 236 F. Supp. 3d 332, 336 (D.D.C. 2017).  The only injury WABA has identified here, other than procedural injury, is an increased risk of physical injury, which is unsupported and insufficient for all the reasons described above.

Because WABA has provided no proof that any member faces a certain, imminent, and unavoidable injury, WABA is not entitled to injunctive relief or a stay, without regard to the Court's determination on the merits.  But WABA's claims fail on the merits as well.

**III.    Defendants are Entitled to Summary Judgment.**

Defendants' cross-motion for summary judgment should be granted because WABA has not challenged a final agency action and because NPS and FHWA discharged all of their statutory obligations under the NCPA, APA, NEPA, and Organic Act.

**A.      WABA Has Not Challenged Final Agency Action.**

If this Court concludes that WABA has established subject-matter jurisdiction to review the agencies' initial decision to proceed with the Cycle Track Removal in February,  Defendants are nevertheless entitled to summary judgment on all of WABA's claims because that initial decision in February is not a final agency action susceptible to judicial review under the APA.[6]

The APA limits review of "agency action" to "final agency action."  5 U.S.C. § 704. Agency action is "final" if it (1) "mark[s] the 'consummation' of the agency's decisionmaking process," and (2) creates legal "rights or obligations," with "direct and appreciable legal consequences."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted).  Failure to challenge final agency action is considered to be failure to state a claim upon which relief can be granted, rather than a defect in the Court's jurisdiction.

The February decision challenged by WABA is not a final agency action because it was subsequently reconsidered, and replaced, with a different final agency action. *See Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012) ("Ongoing agency review renders an agency order non-final and judicial review premature.").  When a decision has been issued after reconsideration, that is the decision fit for judicial review, along with the entire administrative record behind it.  *See id.*  Here, the operative decision is the one NPS memorialized on March 31, 2026, and the administrative record is what NPS considered leading up to that decision.[7]  Whether NPS's Decision Memo is characterized as a "new" decision or as a further iteration of the February decision after reconsideration, it is clear that the February decision is not fit for review as a final

---

[6] The D.C. Circuit has construed the finality requirement in 5 U.S.C. § 704 to be a requirement of the APA cause of action rather than a constraint on federal subject-matter jurisdiction.  *See Perry Capital, LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017).

[7] FHWA's decision and role is to oversee the roadwork that will occur over a limited time period.  WABA does not contend that its members will be injured by the performance of the roadwork.

20

agency action.  Because that is the only decision challenged in the Complaint, summary judgment should be entered in Defendants' favor because WABA has not challenged a final agency action under 5 U.S.C. § 704.

**B.      The Administrative Record Demonstrates that the Agencies Satisfied All of Their Statutory Obligations.**

Contrary to the allegations in WABA's Complaint and Motion, NPS and FHWA completed all the analysis and provided all the explanation that was required in reaching the decision to proceed with the removal of the Cycle Track.

### 1.      The Agencies Complied with the APA.

The APA authorizes a reviewing court to "hold unlawful and set aside" final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43.  A court need only assure itself that the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[.]" *Id.*  A court "will . . . uphold a decision of less than ideal clarity" as long as "the agency's path may reasonably be discerned." *Id.* at 43 (internal quotation marks and citation omitted).

WABA's Complaint, in its second count, alleges that the agencies failed to provide an explanation or reasoning consistent with the APA.[8]  NPS's Decision Memo dated March 31, 2026, embodies the decision and final agency action on the removal of the Cycle Track.  It easily satisfies all the requirements for reasoned decision-making under the APA, as discussed below.

---

[8] WABA's specific allegations concerning the agencies' compliance with NEPA and other statutes are also governed by the APA standard of review and are addressed in detail below.

21

**a. NPS Examined the Relevant Data and Adequately Explained the Decision to Remove the Cycle Track and Restore the Original Lane Configuration.**

NPS decided to remove the Cycle Track and restore the original lane configuration to allow for additional traffic flow on 15th Street and connected roadways.  NPS-AR-001369.  NPS explained that removal of the Cycle Track will "help the public enjoy [the America 250] events by relieving vehicular traffic congestion and allowing existing roads to bring more people to the National Mall and through the National Mall."  NPS-AR-001370.  Restoring the original lane configuration would also "support[ ] implementation" of Executive Order 14252, Making the District of Columbia Safe and Beautiful, and the Interior Secretary's Order 3428 of the same name, because "[t]he proposed project will improve the visual quality of these prominent federal public spaces through removal of roadway appurtenances and restoration of a standardized, maintainable corridor configuration," *id.*

NPS's Decision Memo also addresses the timing of the decision, explaining that "[t]he window for implementing the project is constrained as some of these celebratory events on or around the National Mall are scheduled to commence in mid-May 2026 and events will run through August 2026." *Id.*  The roadwork is expected to take three weeks.  NPS-AR-001369. Although the America 250 celebrations begin in June, NPS decided that work on the project needed to start no later than April 23, so that roadwork is completed and does not interfere with the Interfaith Day of Prayer on the National Mall on May 16 and 17.  NPS-AR-001369 – 1370. Other events in June preclude starting later than May 17, leaving no three-week period where the work could be completed without overlapping with a major event.  At the same time, the Cherry Blossom Festival concludes on April 12, preventing an earlier start date.  *See* NPS-AR-001369.

NPS also "weigh[ed] competing interests" including the impacts on pedestrians and bicyclists, as well as safety.  NPS-AR-001371.  NPS noted that pedestrians and bicyclists will still

have access to this area of the National Mall, and that bicyclists can still cycle on the roads and adjacent sidewalks. *Id.*  NPS's Decision Memo also took into account NPS's March 31 CE analyzing the impacts under NEPA.  *See* NPS-AR-001366.  NPS also considered the DDOT analysis, and relying upon the FHWA's assessment identifying flaws in that analysis, decided to give that analysis "limited weight."  *Id.*  WABA's allegations that Cycle Track will be removed without consideration of its members' "reliance interests," Mem. 25, or potential safety concerns, *id.* at 22-23, simply have no application here.

When reviewing agency action under the arbitrary and capricious standard, "a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty.*, 605 U.S. at 180 (citations omitted); *S. Airways Express, LLC v. U.S. Dep't of Transp.*, 159 F.4th 50, 59 (D.C. Cir. 2025).  NPS's Decision Memo easily clears that bar.

### b.  WABA's Complaint Does Not Allege That the Roadwork Project Itself Violates the APA

Defendants are entitled to summary judgment on any claim, alleged or implied, that FHWA failed to comply with the APA.  FHWA performs the roadwork on NPS's behalf, under the agencies' long-standing MOU.  *See* NPS-AR-00005.  FHWA documented its decision to perform the roadwork on this project in its February CE and March 31 Re-Evaluation.  Nothing in WABA's Complaint or motion alleges that FHWA's decision to perform the roadwork, consistent with the MOU and its statutory contracting authorities, ran afoul of the APA.

### c.  The Explanations in the New Decision Documents are Properly Before the Court.

WABA has indicated that it will ask the Court to "disregard" the agencies' new decision documentation on the basis that it contains only "impermissible post hoc rationales."  3/26/26 Tr. 6:3-4. This argument misunderstands basic administrative law.  The principle that WABA is

23

referencing is the rule that a court "must judge the propriety of [the agency] action solely by the grounds invoked by the agency," not by the arguments of counsel in litigation. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Or, more simply put, a court can consider only "what the agency said" in explaining its conclusions, not "its lawyers' post-hoc rationalizations." *Council for Urological Ints. v. Burwell*, 790 F.3d 212, 222 (D.C. Cir. 2015). The explanations provided in the Decision Memo, March 31 CE, and Re-Evaluation are the reasons given by the agencies, not their litigation attorneys, and are not "post hoc rationalizations," for purposes of this Court's review.

Furthermore, even if this Court were to construe the relevant "decision" in this case to be the decision made in connection with the February CEs, "[t]he 'post hoc rationalization' rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning." *Loc. 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976). An agency is free to submit "amplified articulation" for its actions without running afoul of the post hoc rationalization rule. *Id.* The post-hoc rationalization rule merely prohibits a court "from considering rationales urged by others," not rationales provided by the agency. *Id*.

The articulation of the agencies' reasoning in their new documentation is properly before the Court. WABA's attempt to paint the documents as "post hoc rationales" is merely an attempt to distract the Court from the fact that WABA's original complaint, challenging the agencies' initial decision, is moot.

### 2.    NPS and FHWA Complied with NEPA.

Like its generic claim under 5 U.S.C. § 706(2), WABA's claim that NPS and FHWA violated NEPA fails because the agencies reasonably determined that the project was categorically excluded and no extraordinary circumstances existed that could require additional analysis. Given that both agencies used CE forms when they installed the Cycle Track, WABA cannot be heard to

24

complain about either agency's decision to use a CE form for removing it.  WABA's opposition to the removal does not make it "controversial" for purposes of NEPA, or require any different result. A categorical exclusion provides all the process NEPA required, and the agencies' determinations are entitled to substantial deference.  *Seven Cnty.*, 605 U.S. at 180.

### a.  Categorical Exclusions Under NEPA

NEPA is an environmental law that requires agencies to prepare an Environmental Impact Statement ("EIS") or an Environmental Assessment ("EA") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). However, an agency is not subject to the NEPA requirement to "prepare an EIS and or even an EA if it finds that its proposed action is subject to a 'categorical exclusion.'" *Reed v. Salazar*, 744 F. Supp. 2d 98, 103 (D.D.C. 2010). "Once an agency invokes a categorical exclusion, it is free from further obligations under the National Environmental Policy Act." *Cloud Found., Inc. v. Salazar*, 999 F. Supp. 2d 117, 126 (D.D.C. 2013).

When reviewing an agency's decision to classify a proposed action as falling within a particular categorical exclusion, "[c]ourts should afford substantial deference and should not micromanage those agency choices so long as they fall within a broad zone of reasonableness." *Seven Cnty.*, 605 U.S. at 183.

### b.  The Agencies' use of a CE to analyze the impacts of the removal of the Cycle Track is reasonable and is entitled to substantial deference.

Here, NPS and FHWA reasonably determined that removing the Cycle Track barriers and restoring a prior lane configuration is an action that "normally do[es] not involve significant

environmental impacts." 23 C.F.R. § 771.117(a).[9] Under FHWA's regulations, "[m]odernization of a highway by resurfacing, restoration, rehabilitation, reconstruction, adding shoulders, or adding auxiliary lanes . . . ." is a category of actions that are not subject to NEPA obligations.  23 C.F.R. § 771.117(c)(26) ("subsection (26)").   Removing the Cycle Track barriers and restoring the original lane configuration that existed before 2021 fits within this exclusion by its plain terms, and the agencies reasonably applied it here.  WABA's apparent desire to have the agencies prepare a more detailed EIS or EA, when none was prepared to install the Cycle Track five years ago, is without merit.[10]

### i.  Subsection (26) Applies to the Removal of Traffic Barriers.

WABA's contention that § 771.117(c)(26) does not apply to the removal of the Cycle Track because "removing entire lanes of traffic" is not included in the text of the regulation is strained and unsupported.  *See* Mem. 28.  "Modernization of a highway by resurfacing, restoration, rehabilitation, or reconstruction" logically involves the removal of existing road features and striping.  Indeed, courts have upheld the application of the categorical exclusion in § 771.117(c)(26) to projects involving removal of existing traffic configurations.  *See R.L. Vallee, Inc. v. Vt. Agency of Transp.*, No. 18-CV-104, 2020 WL 4689788, at *1 (D. Vt. July 8, 2020), *aff'd*, No. 20-2665-CV, 2021 WL 4238120 (2d Cir. Sept. 17, 2021) (upholding categorical exclusion of traffic construction project replacing system of left turns with a double crossover

---

[9] NPS adopted FHWA's categorical exclusion in accordance with 42 U.S.C. § 4336c. *See* NPS-AR-001122 (516 Departmental Manual 1, DOI NEPA Handbook, Appendix 2, 16.1 (Feb. 2026)).

[10] WABA repeatedly complains that the agencies conducted their analysis in secret, but NEPA does not require agencies to publish or even create formal documentation of its determination to use a categorical exclusion.  *See* 42 U.S.C. § 4332(C)(v) (citing 5 U.S.C. § 552). *See Back Country Horsemen of Am. v. Johanns*, 424 F. Supp. 2d 89, 99 (D.D.C. 2006) (rejecting an argument that the Forest Service's assertion of a categorical exclusion was "a 'post-hoc' rationalization" because "the agency had no obligation to formally document its decision").

diamond intersection in order to improve flow of traffic); *Fla. Keys Citizens Coal., Inc. v. U.S. Army Corps of Eng'rs*, 374 F. Supp. 2d 1116, 1129 (S.D. Fla. 2005) (upholding categorical exclusion of highway construction project involving replacing an existing bridge with a fixed span bridge); *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. FHWA*, 884 F. Supp. 876, 881 (D.N.J.), *aff'd*, 65 F.3d 163 (3d Cir. 1995) (upholding categorical exclusion of highway construction project widening existing right-of-way on land previously disturbed by highway construction).

WABA's argument that § 771.117(c)(26) does not apply because there is another categorical exclusion for the "[c]onstruction of bicycle lanes" in § 771.117(c)(3) is similarly meritless. Mem. 28. The action at issue here involves *removing* the barriers and physical structures that create the Cycle Track so that the lanes can be restored to their pre-2021 configuration. In any event, the fact that there is a categorical exclusion relating to bicycle lanes only highlights that the type of work associated with them is not normally the type of work to cause significant impacts. The installation of the Cycle Track was supported by a CE form, and WABA did not oppose the use of one then. They should not object to it now. NPS and FHWA reasonably concluded that the reconfiguration of a lane of traffic falls under the ambit of a categorical exclusion, and they appropriately identified 23 C.F.R. § 771.117(c)(26) as the one applicable to this action.

### ii. NPS Reasonably Determined That No Extraordinary Circumstances are Present.

NPS considered whether extraordinary circumstances would prevent the application of the (c)(26) categorical exclusion to the removal of the Cycle Track and reasonably concluded none applied. NPS-AR-001366.[11] The record does not support WABA's contentions to the contrary.

---

[11] FWHA applied the same categorical exclusion and considered NPS's CE forms. *See* FHWA-AR_001; FHWA-AR_ 036; FHWA-AR_038 – 042.

First, with respect to health and safety, NPS reasonably concluded that restoring the lane configuration that existed prior to 2021 would not cause significant impacts. NPS-AR-001366. Cyclists share lanes with cars on many other roads in the District. *Id.*; DC Municipal Regulations, Title 18, Section 1201.1. Cyclists who do not want to share the road with cars on 15th Street can elect to use the adjacent sidewalks. NPS-AR-001366. They can also avoid the route entirely. Furthermore, the project "includes traffic-control measures, clear transition signing/markings at the project termini, and coordination with the local transportation agency to maintain bicycle accommodation and manage operational transitions." *Id.* Taking these factors into consideration, NPS reasonably concluded that the project will not have a significant impact on health and safety.

NPS was aware of the findings in DDOT's Post-Implementation Analysis, and WABA's litigation pleadings relying upon that analysis, when it issued the March 31 CE and Decision Memo. NPS also considered the FHWA's analysis finding "significant methodological flaws" in the DDOT analysis, which, as noted above, attribute improvements in safety and travel times to the Cycle Track based on data from a period where the District experienced a "a massive shift toward telework" and "there were simply fewer cars on the road." NPS-AR-001358. The DDOT analysis thus provides no basis for overriding the "substantial deference" owed to NPS's determination that a categorical exclusion applied. And while WABA may insist that NPS should have presented more facts to *disprove* potential safety impacts, "[t]he agency is better equipped to assess what facts are relevant to the agency's own decision than a court is." *Seven Cnty.*, 605 U.S. at 181.

In sum, it was reasonable for NPS to conclude that restoring the traffic configuration that existed prior to 2021 would not cause a significant impact to health and safety.

28

### iii. The action will not have significant impacts on travel patterns.

WABA is mistaken in its argument that a categorical exclusion is inappropriate because the project will "have significant impacts on travel patterns." Mem. 29 (citing 23 C.F.R. § 771.117(a)). Restoring the original lane configuration will affect traffic flow, not traffic patterns. "A significant impact on travel patterns as the phrase appears in 23 C.F.R. § 711.117(a) is not synonymous with improving the flow of traffic. If it were, Section 711.117(a) would disqualify most highway improvement projects from CE status." *R.L. Vallee,* 2020 WL 4689788, at *8.

Removing the Cycle Track and restoring the original lane configuration will occur entirely within the existing road prism and maintain the current alignment of the road. There will be no new connections between roadways, nor will existing connections be eliminated. Instead, a lane will be reopened to car traffic. This action affects the flow of traffic, but does not affect traffic patterns. *Compare NAACP Erie Unit 2262 v. Fed. Highway Admin.,* 648 F. Supp. 3d 576, 586 (W.D. Pa. 2022) (finding no change in traffic pattern when "the Project's proposed roadway will maintain the [road's] current alignment, largely within the existing right-of-way"), *with West v. Sec'y of Dep't of Transp.,* 206 F.3d 920, 923 (9th Cir. 2000) (finding a change in traffic pattern in a two-stage highway interchange project that adds a new four-lane structure bridge). NPS reasonably concluded that a change in traffic patterns would not occur.

### iv. WABA's Opposition to the Project Does Not Make it "Controversial" Under NEPA.

WABA complains that the action involves "substantial controversy" under FHWA regulations because there were disputes about safety concerns such that "environmental studies were required." Mem. 30. But these concerns do not rise to the level of a substantial controversy under NEPA. *See NAACP Erie,* 648 F. Supp. 3d at 594 (finding that public comments expressing

29

concerns about safety and bicycle access, among other things, did not support plaintiffs' claim of substantial controversy).  WABA does not cite any case where safety concerns were found to create a "substantial controversy" where no environmental considerations were at issue.

Even if there were a "substantial controversy," the agencies have considered safety and reasonably determined that the project will not have significant safety impacts, given that it is restoring the lane configuration that existed prior to 2021.  As long as the agency has considered the controversy, "[t]he fact that a substantial controversy on environmental grounds exists [does] not disqualify FHWA from issuing a categorical exclusion." *Delaware Riverkeeper Network v. Pennsyvlania Dep't of Transp.*, No. CV 18-4508, 2020 WL 4937263, at *26 (E.D. Pa. Aug. 21, 2020).  NPS considered the DDOT Post-Implementation Analysis and reasonably decided to give it "limited weight" in light of its methodological flaws.  NPS-AR-001370.  "Plaintiffs' earnest good faith persistent disagreement, and even their experts' disagreement, with the final outcome does not render Defendants' determinations arbitrary or capricious." *Del. Riverkeeper*, 2020 WL 4937263, at *26.

NEPA is "not a suitable vehicle for airing grievances about the substantive policies adopted by an agency, as NEPA was not intended to resolve fundamental policy disputes." *Front Range Equine Rescue v. Vilsack*, 753 F.Supp.3d 6, 12 (D.D.C. Oct. 11, 2024) (Berman Jackson, J.) (citations omitted).  To require an EIS whenever there is public opposition to an action "would surrender the [EIS] determination to opponents of a federal action, no matter . . . how insignificant its environmental effect might be." *Partners in Forestry Co-op. v. U.S. Forest Serv*., 638 F. App'x 456, 463 (6th Cir. 2015) (quoting *Rucker v. Willis*, 484 F.2d 158, 162 (4th Cir. 1973)).  While members of WABA clearly favor bicycle lanes, their opposition to the removal of a bicycle lane does not make it a "substantial controversy" under NEPA.

30

### c.   FHWA's Use of a CE was Reasonable.

FHWA's role in the Cycle Track removal is to oversee the roadwork.  FHWA reasonably relied upon NPS's determinations that removing the Cycle Track and restoring the original lane configuration would not cause significant impacts to health and safety, and that no other extraordinary circumstances were present.   WABA has not alleged that there are other considerations that FHWA needed to take into account or that the roadwork itself would cause significant impacts.

FHWA and NPS both appropriately discharged their obligations under NEPA using a Categorical Exclusion, and their decisions are afforded substantial deference.  Defendants are entitled to summary judgment on WABA's NEPA claim.

### 3.      The Agencies Had no Obligation to Engage in Consultation under the National Capital Planning Act.

WABA contends that the agencies violated the National Capital Planning Act because they did not consult with the Planning Commission.  There is no merit to this contention.

The National Capital Planning Act established the Planning Commission as the central planning agency for the Federal Government in the National Capital.  40 U.S.C. § 8721.  The Act requires federal planning agencies to furnish information to the Commission "on [its] request."  *Id.* § 8722(a).  The Act also directs federal planning agencies to consult with the Commission "before **preparing construction plans** . . . for proposed developments and projects."  *Id.* § 8722(b)(1) (emphasis added).  WABA argues that Defendants have violated the APA by failing to submit the Cycle Track project to the NCPC for review.  Mem. 16.  But removing bicycle lane barriers and repaving a roadway does not entail "construction plans" and thus falls outside the ambit of the statute.  Indeed, the Commission "has long denied that it has jurisdiction over demolition and site

31

preparation work for federal buildings on federal property." *See* 9/4/2025 NCPC Tr. 17.[12]  And the

NCPC confirmed as much when NPS inquired.  *See* NPS-AR-001197.

The fact that NPS consulted with the Planning Commission about the installation of the

Cycle Track does not mean that consultation is required for the removal of the Cycle Track.  The

installation of the Cycle Track involved construction plans,  NPS-AR-000886 – 898, and could

have conflicted with the "design aesthetic" of the National Mall if typical vertical dividers were

used. *See* NPS-AR-000844.  Here, NPS and FHWA are removing features within the existing road

prism, and restoring the original lane configuration that existed prior to 2021.  No consultation

obligation attached.

Defendants are entitled to summary judgment on WABA's claim that the agencies

violated the APA by failing to consult with the NCPC.

### 4.    NPS Complied with the Organic Act.

WABA's argument that NPS violated the Organic Act is similarly unavailing.  As an initial

matter, WABA does not allege that the removal of the Cycle Track and restoration of the original

lane configuration impairs or could even potentially impair national park resources or values, in

violation of the statute.  WABA simply invokes the Organic Act to take a third bite at the apple on

the "failure to explain" allegations in its APA and NEPA counts.  Defendants are entitled to

summary judgment on WABA's Organic Act claim for the same reason it is entitled to summary

judgment on those other claims: NPS considered the relevant factors and reasonably concluded

that the potential impacts of removing the Cycle Track and restoring the original lane configuration

did not warrant further analysis for purposes of the statute.

---

[12] At https://www.ncpc.gov/docs/open_gov_files/transcripts/2025/2025_09_04_NCPC.pdf (last
accessed Apr. 3, 2026).

### a. Statutory Background

The "fundamental purpose" of the National Park System is "to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of" those resources "in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a). NPS's mandate is to "promote and regulate the use of the National Park System by means and measures that conform to th[at] fundamental purpose." *Id*. Therefore, NPS may not exercise its authorities "in derogation of the values and purposes for which the System units have been established, except as directly and specifically provided by Congress." 54 U.S.C. § 100101(b)(2). However, "[b]ecause the Organic Act is silent as to the specifics of park management," NPS has "especially broad discretion" in its implementation of the Organic Act's mandates. *Davis*, 202 F.3d at 365. *See also Bicycle Trails Council of Marin v. Babbitt*, 82 F.3d 1445, 1454 (9th Cir. 1996) (NPS has "broad discretion in determining which avenues best achieve the Organic Act's mandate," and NPS is "empowered with the authority to determine what uses of park resources are proper and what proportion of the park's resources are available for each use." (citations omitted)). A court must uphold NPS's exercise of this discretion unless it is arbitrary and capricious under the APA. *Daingerfield Island Protective Soc. v. Babbitt*, 40 F.3d 442, 446 (D.C. Cir. 1994).

### b. NPS Reasonably Explained its Determination that the Project Would Not Impair Park Resources.

WABA attempts to combine disparate threads of case law into an argument that the Organic Act was violated. Mem. 31-33. But WABA has not actually argued that the removal of the Cycle Track will cause an impairment of park resources or values, in violation of the statute. At most, WABA seems to suggest that NPS somehow violated the Organic Act by failing to provide "an adequate explanation" of its decision to "prioritize[e] motor vehicle traffic," *id.* a 32, or a

33

"satisfactory explanation" about how it balanced "access" with "visitor safety," *id.* at 33. As discussed above, NPS reasonably explained why it wanted to increase the "carrying capacity" of the roads and reasonably explained why, when it "weigh[e]d competing interests," WABA's cited safety statistics received only "limited weight" in that analysis. NPS-AR-001370.

The Organic Act required no more than this. The statute does not contain any independent writing requirement. Although NPS does prepare written non-impairment determinations in some circumstances, *see* NPS Management Policies § 1.4.7 (2006), NPS-AR-00037, those circumstances are not present here. As the Decision Memo explains, under NPS's *Guidance for Non-Impairment Determinations and the NPS NEPA Process* (Apr. 2025)*,* only actions that require an EA or EIS under NEPA are considered to have the potential to impair park resources and values or have unacceptable impacts. NPS-AR-001372; NPS-AR-000973. *See also* NPS Management Policies § 1.4.5, NPS-AR-00035 (an "impairment" is "an impact that, in the professional judgment of the responsible NPS manager, would harm the integrity of park resources and values, including the opportunities that otherwise would be present for the enjoyment of those resources or values"). As discussed above, NPS reasonably concluded that a categorical exclusion applied and that the project would not have significant impacts requiring preparation of an EA or EIS. Therefore, applying its *Guidance,* NPS properly determined, and explained, that additional analysis was not required to discharge its obligations under the Organic Act. NPS-AR-001372.

The cases on which WABA premises its Organic Argument are inapposite and do not support a different conclusion. *Greater Yellowstone Coalition v. Kempthorne*, 577 F. Supp. 2d 183 (D.D.C. 2008), involved NPS's decision to authorize snowmobile access in Yellowstone National Park. In 2000, NPS had published an EIS finding that the impacts of the snowmobiles constituted an impairment; in 2007, NPS issued an EIS concluding that there would be no impairment

34

associated with any of its proposed alternatives for snowmobile access. *See id.* at 186-87. The Court found that NPS had failed to articulate its basis for that determination, in light of its prior findings. *Id.* at 194-95. Here, as noted, NPS reasonably concluded that a categorical exclusion applied, and an EIS was not warranted. *Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008), is a case about tort liability, and whether NPS's "failure to warn" could give rise to liability in the circumstances of that case; it was not about a failure to explain. *See id.* at 1135.

WABA's Organic Act claim is nothing more than a reframing of its APA and NEPA allegations, and it fails for the same reasons. Defendants are entitled to summary judgment on this claim, and all the others, in WABA's complaint.

## CONCLUSION

For the reasons stated above, WABA's Complaint should be dismissed for lack of subject-matter jurisdiction. If the Complaint is not dismissed, WABA's Motion for a Preliminary Injunction and Motion for Summary Judgment should be denied, and Defendants' Cross-Motion for Summary Judgment should be granted.

Respectfully submitted this 3rd day of April, 2026.

ADAM R. F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

BRADLEY CRAIGMYLE
Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

 /s/  Judith E. Coleman
JUDITH E. COLEMAN
Trial Attorney (DC Bar No. 980382)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611, Benjamin Franklin Station
Washington, DC 20044

35

Tel: (202)-305-5031
Email: Judith.Coleman@usdoj.gov

*Attorneys for Defendants*