**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

WASHINGTON AREA BICYCLIST
ASSOCIATION, INC.,

        Plaintiff,

v.

DOUGLAS BURGUM, in his official
capacity as Secretary of the Interior, *et al.*,

        Defendants.

Case No. 1:26-cv-988-ABJ

**DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION
<u>FOR SUMMARY JUDGMENT</u>**

i

**INTRODUCTION AND SUMMARY OF REPLY**

The Court's task in this case is a limited one.  Based on the amended complaint filed by Plaintiff Washington Area Bicyclist Association, Inc. ("WABA") (Dkt. 23), the administrative records (Dkts. 16 & 17), and the briefing by the parties, the case is now limited to judicial review of the March 31 Decision Memo issued by the National Park Service ("NPS") to remove the 15th Street Cycle Track ("Cycle Track") commencing April 23, 2026. *See* NPS-AR-001369.  WABA has not challenged any action by the Federal Highway Administration ("FHWA"), and WABA has supplied no legal or practical reason why the Court should confine its review of NPS's decision to the February Categorical Exclusion ("CE") form.  The Court has all it needs to review the March 31 Decision Memo right now, and it would waste judicial and party resources not to do so.  The Decision Memo, and the administrative record supporting it, show that NPS's decision to remove the Cycle Track was "reasonable and reasonably explained," and NPS is entitled to "substantial deference" in its determination that restoring the pre-2021 lane configuration would not cause significant impacts or impairment, *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025).

None of the arguments in WABA's response memorandum (Dkt. 24, "WABA Resp.") compel a different conclusion.  Although WABA spills considerable ink on its contention that the March 31 Decision Memo is a "post hoc rationalization," WABA Resp. 16-21, WABA does not identify any "rationalization" in particular that it wants the Court to ignore.  Even if the Court were to treat the Decision Memo as something other than the final agency action, contrary to circuit precedent, *see Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012), it is "perfectly appropriate" for the Court to consider the March 31 Decision Memo, the agency's March 31 CE, and other

record documents that supply an "amplified articulation" of NPS's reasoning, *Alpharma v. Leavitt*, 460 F.3d 1, 7 (D.C. Cir. 2006).

On the merits, WABA's allegations of procedural violations fail for all of the reasons Defendants previously identified.  The decision at issue concerns removing bicycle lane barriers and striping on a mile of roadway; it is not notice-and-comment rulemaking, a formal adjudication, or a statement of policy about bicycle lanes other than the Cycle Track.  To the extent the NPS's actions here represent a change in "position" that requires explanation, NPS provided all the explanation that was required: the agency wants to increase the carrying capacity of 15th Street and the connected roadways to facilitate visitation for the America 250 events.  Although WABA may disagree with the outcome, the Administrative Procedure Act ("APA") does not permit a court to substitute its judgment for the agency's about whether that decision is good policy.  Nor does it authorize a Court to permanently enjoin future agency action to remove the Cycle Track in the future based solely on speculation about future injury that is entirely avoidable, and not irreparable.

For all of these reasons, and those stated in Defendants' previous brief (Dkt. 22-1, "Defs. Mem."), summary judgment should be entered in favor of Defendants on all of the claims in the Amended Complaint.

**ARGUMENT**

**I.**     **The March 31 Decision Memo is Final Agency Action Subject to Review on the Certified Administrative Record, Not a "Post Hoc Rationalization."**

Plaintiffs' argument that the NPS' March 31 Decision Memo is no more than a post-hoc rationalization assumes that there can only be one decision to remove the Cycle Track and that agencies may not amplify their reasoning. That assumption is wrong.  With the filing of WABA's Amended Complaint (Dkt. 23), this case is now framed as one for judicial review of NPS's March 31 Decision Memo on the basis of the certified administrative record supporting it.  WABA's

argument that the Court should ignore the March 31 Decision Memo and other supporting documents because they are "post hoc rationalizations" is a distraction.  WABA alleges without foundation that NPS did not actually reconsider its decision.  And, although WABA devotes much of its brief to this argument, WABA any has not identified any specific "rationalizations" within the March 31 documents that it wants the Court to ignore; it bluntly asks the Court to ignore the documents in their entirety.   But as discussed below, the doctrine applies to post hoc "rationalizations" rather than to documents.  *See infra.*  There is no legal basis for the Court to confine its review to the February CE, and doing so would waste judicial resources.

**1.**  The March 31 Decision Memo is a final agency action resulting from the agencies' reconsideration of the Cycle Track removal project after the start date was delayed.  This final action is the one that is fit for review, and that review proceeds on the basis of the administrative record that NPS provided.  *See Marcum v. Salazar*, 694 F.3d 123, 128 (D.C. Cir. 2012).[1]  WABA's attempt to recast the decision as something other than final agency action fall flat.  WABA cites no authority requiring NPS to announce that it was reconsidering its decision (although it did so on March 25), or to move for a voluntary remand for that purpose.[2]  NPS began reconsidering the

---

[1] WABA makes no separate allegation or argument about FHWA's categorical exclusion or decision to perform the roadwork associated with the project.  Accordingly, this reply focuses on NPS.  FHWA's actions should be upheld for the reasons stated in Defendants' Memorandum.

[2] Agencies sometimes request voluntary remand in order to obtain a stay of litigation while they reconsider their decisions, as the agency did in *FBME Bank Ltd. v. Lew*, 142 F. Supp. 3d 70 (D.D.C. 2015).  But a motion for a voluntary remand is not required.  In *Anchor Line Ltd. v. Federal Maritime Commission*, 299 F.2d 124 (D.C. Cir. 1962), cited by WABA, the D.C. Circuit confirmed that pending litigation does *not* bar an agency from reopening its proceedings on its own initiative, and that the proper course of action is *either* to seek a remand *or* an order holding the case in abeyance so that the court does not waste judicial resources reviewing a decision that no longer represents the agency's conclusion  *See id.* at 125.  Here, it was unnecessary to pursue either option because NPS began reevaluating its decision before WABA filed its complaint, and NPS completed that review and has issued a new decision following that review.

decision *before* WABA filed its complaint.  WABA learned that the project was delayed on Sunday, March 22 because that is the date that WABA notified the Department of Justice that it was intending to file a lawsuit.  Had WABA provided that notification earlier, WABA might have learned earlier about the delay.

Ultimately, WABA bears the responsibility for having to litigate against a "moving target," WABA Resp. 20.  WABA filed its complaint on March 23, knowing the project was delayed.  WABA was informed on March 25 that NPS was reviewing its documentation to determine whether additional documentation or analysis was needed.  *See* 3/25/26 (morning) Tr. 7:21-25.  WABA then made the strategic decision to move for a preliminary injunction on March 26, fully aware that NPS would be issuing new documentation in a matter of days.  *See generally* 3/26/26 Tr.  In other words, WABA chose the path that it knew would lead to litigating against a moving target.  Any purported prejudice to WABA caused by NPS's issuance of a new decision was avoidable, and self-inflicted.

**2.**  The reasoning in NPS's March 31 Decision Memo is not "post hoc" because it is the reasoning provided with the final agency action embodied in that decision.  But even if the Court were to view the operative decision to remove the Cycle Track as one that was made in February, the March 31 Decision Memo and March 31 CE are no more than an "amplified articulation" of the agency's reasoning that is permissible under long-standing D.C. Circuit precedent.  *See Local 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976).  These documents are not litigation affidavits or attorney work product; they are decision documents issued by the relevant agency decisionmakers and represent the considered views of the agency.  Therefore, it is "perfectly appropriate" for the Court to consider them, *see Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 7 (D.C. Cir. 2006), and it would be in the interest of judicial economy for the Court to do so.

*Department of Homeland Security vs. Regents of the University of California*, 140 S. Ct. 1891 (2020), cited by WABA, is not apposite here. The document at issue in that case was a memorandum that the district court *ordered* the agency to provide to supply additional explanation of the agency's decision, nine months earlier, to rescind the Deferred Action for Childhood Arrivals (DACA) program. *See id.* at 1907. The memorandum the agency provided did not purport to be a new action or to reflect a new decision. *See id.* at 1908. The memorandum addressed only certain legal arguments, including some that had not been suggested by the original decisionmaker. *Id.* Here, by contrast, NPS reviewed its decision prior to the filing of the complaint, and it issued a new decision based on a consideration of additional documents and changed circumstances. All of these materials are before the Court. WABA has supplied no reason for the Court to ignore it.

**3.** WABA's post hoc rationalizations argument can also be dismissed for the simple reason that WABA has not actually identified a particular "rationalization" that it thinks the Court should ignore. WABA has cited no authority under which a court can label a document in its entirety as a post hoc rationalization. Rather, in each case, including *Regents*, the reviewing court identified the specific contentions that it believed to be "new" and conducted its analysis with those reasons discarded. *See, e.g.*, *Regents*, 140 S.Ct. at 1908   Here, WABA has identified only <u>two</u> "never-before-seen rationales," WABA Resp. 19, one of which is not new at all, and WABA does not ask the Court to ignore either of them.

WABA first points to NPS's consideration of FHWA's memorandum about DDOT's Post-Implementation Analysis of the Cycle Track. *See id.* It is undisputed that FHWA's memorandum was prepared after the February CE and not part of the administrative record as it stood in February. But, as noted, WABA has not asked the Court to disregard NPS's conclusions about

the DDOT analysis.  And for good reason: With its amended complaint, WABA proffered an entirely new DDOT memo, dated April 6, 2026, in which DDOT presents a new analysis based on a revised methodology.  *See* Dkt. 23-2.  In this new analysis DDOT abandons its prior finding that the Cycle Track was associated with a "46% reduction in crashes," i.e., the very statistic that NPS and FHWA criticized as "mathematically unsupported."  *See* NPS-AR-001371.  *Compare* Dkt. 23-2 (finding reduction of crashes by 16% using vehicle miles traveled).[3]  In short, WABA is no longer relying upon the original DDOT Post-Implementation Analysis, so there is no reason for the Court to take up the argument that the NPS's decision to afford that analysis "limited weight" is impermissibly post hoc.

The only other "post hoc rationalization" identified by WABA is NPS's observation that bicyclists will be able to ride on the sidewalk instead of in the road.  WABA Resp. 19.  This is not a new or post hoc rationale.  In the February CE, NPS explained that "[r]emoval of the separated bicycle facility will have an operational effect on bicycles, *including a change in facility type and user experience*," and "restores conditions that already existed prior to the installation of the separated bicycle facility."  NPS-AR-001148 (emphasis added).  NPS's March 31 CE explains the bicyclists can either use a shared road or use the sidewalk—i.e., a "facility" that is not the "separated bicycle facility."  This is the same reason NPS provided in February made before, just without the "facility" term of art.  And, in any event, WABA has not asked the Court to disregard this reason in NPS's analysis.

\* \* \*

---

[3] The April 6 DDOT memo and the Supplemental Declaration of William Schultheiss are not in the administrative record and may not be considered in evaluating the merits of WABA's claims.

In summary, WABA's post hoc rationalization argument fails because the March 31 Decision Memo is final agency action and a new decision supported by its own records and rationale; in the alternative, the Court may properly consider the March 31 Decision Memo and associated record as "amplified articulation[s]" of the agency's reasons, *Alpharma*, 460 F.3d at 7; and WABA has not identified any "rationalization" in those documents that the Court should ignore.  Now that WABA has amended its complaint, the case can and should proceed as one to review the agencies' new decision, on the basis of the administrative records the agencies provided for that decision.

## II.      Defendants are Entitled to Summary Judgment.

WABA's response brief argues that the March 31 Decision Memo and NEPA documentation is rife with explanatory shortcomings.  But under the APA's deferential standard of review, a court must uphold the agency's decision as long as it considered the relevant factors and its reasoning "may reasonably be discerned."  *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,*, 463 U.S. 29, 43 (1983).  This standard applies to all of WABA's claims, and NPS has satisfied it.  Defendants explained why that is the case in their opening brief. Defs' Mem. 21-33.   A few points raised by WABA warrant a short, additional response.

*First*, consultation with the National Capital Planning Commission was not required, and NPS reasonably relied upon the confirmation of the Planning Commission's director of urban design and plan review that its position was correct.  NPS-AR-001197.  WABA's argument that paving constitutes "construction" is belied by the fact that they cite no example in which the Planning Commission deemed such routine road activities as falling within its statutory review authority.  If WABA takes issue with the Planning Commission's interpretation of the statute it has been tasked with implementing, a suit against NPS is not the place to raise it.

*Second*, with respect to its claim that NPS's decision should be set aside under 5 U.S.C. § 706(2)(A), WABA argument that the agency failed to explain its change in position is without merit. NPS has not changed any "position" about bicycle lanes in general or the Cycle Track in particular. Unlike in *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), there was no set policy concerning bikes lanes for which a reasoned explanation would be necessary to explain a change in position. *See FDA v. Wages & White Lion Invs.*, 604 U.S. 542, 570 n.5 (2025) ("We have traditionally applied the change-in-position doctrine when an agency shifts from a position expressed in a more formal setting."). For example, agencies have changed position when they "rescinded a prior regulation" or "abandon[ed a] decades-old practice" applied in enforcement actions. *Id.* at 570. The decision to remove bike lanes is not a decision about the propriety of bike lanes generally but a park management decision within NPS's discretion. But even if there were a change in position (which is there is not), NPS explained how the events surrounding the 250th anniversary celebration required another lane of traffic to accommodate the large number of visitors anticipate to coming to those events. Such a decision falls squarely within NPS' discretion. To the extent the agency's explanation fell short in any respect, the error is harmless in any event because further elaboration would not have changed the procedure NPS used or resulted in a different outcome. *See id.* at 590.

*Third*, WABA fails to supply any basis for the Court to disturb NPS's determination that the removal of the Cycle Track and restoration of the original lane configuration falls within a categorical exclusion. It bears repeating that "[d]ocumentation of reliance on a categorical exclusion need not be detailed or lengthy," and "[i]n most instances, a short statement that a categorical exclusion has been invoked will suffice to assure a reviewing court that environmental effects have been considered." *Wilderness Watch & Pub. Employees for Envtl. Responsibility v.*

*Mainella*, 375 F.3d 1085, 1095 (11th Cir. 2004).  The agencies have cleared this bar.  WABA's contention that there will be an additional right-turn lane from 15th Street onto Maine Avenue is incorrect.  There is a right turn lane there now, and restoring access will not result in a "significant" impact on travel patterns.   Finally, there is no "substantial controversy on environmental grounds" preventing the use of a categorical exclusion for this project.  The conditions that existed on 15th Street without the Cycle Track, prior to 2021, were well understood and studied.  Those conditions did not reflect significant safety risks on 15th Street.  *See* NPS-AR-00791 (showing crashes at and north of Constitution Avenue).[4]  The scope of the action here is not in dispute because the conditions will be restored to what they were less than five years ago.  The strongly held views of WABA's members and expert in favor of the Cycle Track do not show there is anything more for the agency to analyze.  The decision to install the Cycle Track involved a categorical exclusion and WABA provide no grounds why its removal is also not properly addressed by a categorical exclusion.

Fourth, WABA's amended complaint and brief confirm that its claim for a violation of the Organic Act is nothing more than a failure to explain argument in different garb.  *See* Dkt. 23, ¶¶ 103-107; WABA Resp. 36.  WABA has not alleged that any national park resources are impaired by the removal of the Cycle Track.  This is fatal to WABA's claim.  NPS properly determined that there were no significant impacts to the environment, and that no further analysis of impairment under the Organic Act was required.

---

[4] As Defendants noted, WABA's allegation that there were "more than 200 crashes" on 15th Street between 2015 and 2020 appears to be based on a presentation that shows the crashes occurred at or *north* of Constitution Avenue—not on the National Mall or in the Tidal Basin where the Cycle Track is being removed.  Defs.' Mem. 16.  The correct citation for this presentation slide is NPS-AR-000791, and it is appended to this Reply for the Court's convenience.

### III.    WABA is Not Entitled to a Permanent Injunction.

The APA authorizes a court to review a final agency action and to set aside an agency action that is arbitrary and capricious or otherwise unlawful.  5 U.S.C. § 706(2).  Vacatur is not a foregone conclusion, much less any form of injunctive relief.  *See Seven Cnty*, 605 U.S. at 169 (procedural deficiency in an EIS "does not necessarily require vacating an agency's project approval, absent reason to believe that the agency might disapprove the project" through the additional process.) Where, as here, a plaintiff alleges that an agency has failed to adequately explain its decision, or failed to provide due consideration to some relevant factor, courts apply the factors outlined in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146 (D.C. Cir. 1993),[5] and they routinely conclude that the appropriate remedy is a remand to the agency for additional explanation, *without* vacatur of the agency decision.  *See, e.g.*, *City of Port Isabel v.* FERC, 130 F. 4th 1034 (D.C. Cir. 2025); *Pub. Emps. for Env't Resp. v. Nat'l Park Serv*. ("*PEER*"), 605 F. Supp. 3d 28, 62 (D.D.C. 2022),

Just so here.  The application of the *Allied Signal* factors would weigh in favor of a remand, without vacatur, because the deficiencies alleged by WABA are explanatory in nature, and there is "at least a serious possibility that [the agency] will be able to substantiate its decision on remand." *PEER*, 605 F. Supp. 3d at 62 (internal quotations omitted).  *See also Am. Public Gas Ass'n* v. *U.S. Dep't of Energy*, 22 F.4th 1018, 1031 (D.C. Cir. 2022) (describing a "failure[ ] to explain" as "the type of deficiency most readily remedied on remand").

---

[5] Under *Allied-Signal*, the decision whether to vacate depends on "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal*, 988 F.2d at 150–51 (internal citations omitted). When an agency's reasoning is found to be legally deficient, but there is "at least a serious possibility that the [agency] will be able to substantiate its decision on remand," vacatur is not necessary. *Id.* at 151.

Nothing in the APA or WABA's litigation filings provides this Court with a basis to enter a permanent injunction, much less an injunction that would prohibit *future* agency action to remove the Cycle Track in the future.  WABA has not alleged that any statute *mandates* a Cycle Track on 15th Street, and WABA's alleged explanatory and procedural violations are not the kind of violations for which an injunction is an appropriate remedy.  *See Monsanto v. Geertsen Seed Farms, Inc.*, 561 U.S. 139, 157 (2010).  Further, WABA does not and cannot plausibly show any of its members will be irreparably injured by the Cycle Track's removal.  For all of the reasons set forth in Defendants' opening brief (which Defendants hereby incorporate by reference), WABA has not demonstrated irreparable injury because the physical injuries that WABA alleges are speculative, avoidable, and thus highly unlikely and improbable, and no other injury that WABA identifies is of the certainty or magnitude justifying permanent injunctive relief.

## CONCLUSION

For the reasons stated above, in Defendants' opening brief, and at the forthcoming hearing, Defendants' Cross-Motion for Summary Judgment should be granted.


Respectfully submitted this 8th day of April, 2026.

> ADAM R. F. GUSTAFSON
> Principal Deputy Assistant Attorney General
> U.S. Department of Justice
> Environment & Natural Resources Division
>
> BRADLEY CRAIGMYLE
> Deputy Assistant Attorney General
> U.S. Department of Justice
> Environment & Natural Resources Division
>
> */s/ Judith E. Coleman*
>
> JUDITH E. COLEMAN
> Trial Attorney (DC Bar No. 980382)
> U.S. Department of Justice
> Environment & Natural Resources Division

Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, DC 20044
Tel: (202)-305-5031
Email: Judith.Coleman@usdoj.gov

*Attorneys for Defendants*