**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| WASHINGTON AREA BICYCLIST ASSOCIATION, INC., | |
| *Plaintiff*, | Case No. 1:26-cv-00988-ABJ |
| v. | |
| DOUGLAS BURGUM, in his official capacity as SECRETARY OF THE INTERIOR; | |
| DEPARTMENT OF THE INTERIOR; | |
| JESSICA BOWRON, in her official capacity as ACTING DIRECTOR, NATIONAL PARK SERVICE; | |
| NATIONAL PARK SERVICE; | |
| SEAN DUFFY, in his official capacity as SECRETARY OF TRANSPORTATION; | |
| DEPARTMENT OF TRANSPORTATION; | |
| SEAN MCMASTER, in his official capacity as ADMINISTRATOR, FEDERAL HIGHWAY ADMINISTRATION; | |
| FEDERAL HIGHWAY ADMINISTRATION, | |
| *Defendants*. | |

**PLAINTIFF'S SUPPLEMENTAL**
**<u>MEMORANDUM ON REMEDY</u>**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

I.    This Court Should Not Depart from the Ordinary Remedy of Vacatur. ............................ 1

    A.    The Deficiencies in Defendants' Decisionmaking are Serious and Not
        Vacating the Removal Project Would Have Disruptive Consequences. ................ 2

        1.    The Removal Project's Deficiencies Are Serious. ..................................... 2

        2.    Greenlighting the Removal Project Would Have Disruptive
             Consequences. ............................................................................................ 5

    B.    Defendants' Errors Cannot be Harmless Because They Affected the
        Outcome of Defendants' Decisionmaking. .............................................................. 6

II.    A Permanent Injunction Is Necessary to Prevent Defendants from Attempting to
     Evade Judicial Review. ...................................................................................................... 8

    A.    WABA Has Shown Irreparable Harm and a Permanent Injunction Is
        Warranted. ............................................................................................................... 8

    B.    An Injunction Would Have a Meaningful Practical Effect Independent of
        Vacatur. ................................................................................................................. 11

    C.    WABA's Requested Relief Is Appropriately Tailored. ........................................ 12

CONCLUSION ....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ................................................................................2, 4, 6

*Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.,*
    No. 25-cv-01780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025) ................................................9

*Am. Pub. Gas Ass'n v. DOE,*
    22 F.4th 1018 (D.C. Cir. 2022) ................................................................................2

*Anacostia Watershed Soc'y v. Babbitt,*
    875 F. Supp. 1 (D.D.C. 1995) ................................................................................14

*Anacostia Watershed Soc'y v. Babbitt,*
    871 F. Supp. 475 (D.D.C. 1994) ................................................................................13

*Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.,*
    972 F.3d 83 (D.C. Cir. 2020) ................................................................................3

*Black Rock City LLC v. Haaland,*
    No. 19-cv-3729, 2022 WL 834070 (D.D.C. Mar. 21, 2022) ................................................3

*Calcutt v. FDIC,*
    598 U.S. 623 (2023) ................................................................................6

*Checkosky v. SEC,*
    23 F.3d 452 (D.C. Cir. 1994) ................................................................................3

*City of Port Isabel v. FERC,*
    130 F.4th 1034 (D.C. Cir. 2025) ................................................................................1, 4, 6

*Conservation Law Foundation v. Ross,*
    422 F. Supp. 3d 12 (D.D.C. 2019) ................................................................................5

*District of Columbia v. Dep't of Agric.,*
    444 F. Supp. 3d 1 (D.D.C. 2020) ................................................................................10

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs,*
    62 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................5

*Food Mktg. Inst. v. ICC,*
    587 F.2d 1285 (D.C. Cir. 1978) ................................................................................7

ii

*Ft. Funston Dog Walkers v. Babbitt*,
   96 F. Supp. 2d 1021 (N.D. Cal. 2000) ...................................................................................9

*Fund For Animals v. Clark*,
   27 F. Supp. 2d 8 (D.D.C. 1998) ..........................................................................................10

*Galusha v. N.Y. State Dep't of Env't Conservation*,
   27 F. Supp. 2d 117 (N.D.N.Y. 1998) ....................................................................................9

*Heartland Reg'l Med. Ctr. v. Sebelius*,
   566 F.3d 193 (D.C. Cir. 2009) ...............................................................................................3

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..............................................................................................................11

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ..............................................................................................................11

*Montana Wilderness Ass'n v. Fry*,
   408 F. Supp. 2d 1032 (D. Mont. 2006) .................................................................................14

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ..................................................................................................................3

*Nat'l Audubon Soc'y v. Butler*,
   160 F. Supp. 2d 1180 (W.D. Wash. 2001) ............................................................................14

*Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*,
   2026 WL 533420 (D.D.C. Feb. 26, 2026) .............................................................................10

*Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*,
   No. 25-cv-4316, 2026 WL 877779 (D.D.C. Mar. 31, 2026) ...................................................9

*O.A. v. Trump*,
   404 F. Supp. 3d 109 (D.D.C. 2019) ......................................................................................11

*PDK Lab'ys Inc. v. DEA*,
   362 F.3d 786 (D.C. Cir. 2004) ...............................................................................................8

*Powder River Basin Res. Council v. U.S. Dep't of the Interior*,
   No. 22-cv-2696, 2026 WL 555013 (D.D.C. Feb. 27, 2026)....................................................3

*Prohibition Juice Co. v. FDA*,
   45 F.4th 8 (D.C. Cir. 2022) ....................................................................................................7

*Pub. Emps. for Env't Resp. v. U.S. Fish & Wildlife Serv.*,
   189 F. Supp. 3d 1 (D.D.C. 2016) ...........................................................................................5

*Pub. Serv. Co. of Colorado v. Andrus*,
825 F. Supp. 1483 (D. Idaho 1993), modified, No. CIV. 91-0035-S-HLR,
1993 WL 388312 (D. Idaho Sept. 21, 1993).................................................................14

*\*Ramirez v. U.S. & Customs Enforcement*,
568 F. Supp. 3d 10 (D.D.C. 2021).................................................................................14

*Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*,
793 F. Supp. 3d 19 (D.D.C. 2025).................................................................................12

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025).........................................................................................................7

*\*Sherwood v. Tenn. Valley Auth.*,
No. 3:12-CV-156-TAV-HBG, 2017 WL 3261769 (E.D. Tenn. July 31, 2017)......................13

*Sierra Club v. Trump*,
No. 19-cv-00892, 2019 WL 2715422 (N.D. Cal. June 28, 2019)........................................9, 10

*Sierra Club v. Van Antwerp*,
719 F. Supp. 2d 77 (D.D.C. 2010)...................................................................................5

*\*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
985 F.3d 1032 (D.C. Cir. 2021)....................................................................................2, 4

*United Steel v. Mine Safety & Health Admin.*,
925 F.3d 1279 (D.C. Cir. 2019)....................................................................................1, 6

*Washington v. Dep't of Transp.*,
No. 25-cv-00848, 2026 WL 183584 (W.D. Wash. Jan. 23, 2026) ....................................8, 9

*WildEarth Guardians v. Zinke*,
368 F. Supp. 3d 41 (D.D.C. 2019)...................................................................................6

*Wilderness Soc'y v. U.S. Dep't of Interior*,
2024 WL 3443754 (D.D.C. July 16, 2024), *appeal dismissed*, No. 24-5212,
2024 WL 4309257 (D.C. Cir. Sept. 26, 2024)..................................................................6

**Other Authorities**

Fed. Highway Admin., *Proven Safety Countermeasures: Bicycle Lanes* (last
visited Apr. 7, 2026), https://perma.cc/KH6L-FCJJ........................................................4

Fed. R. Civ. P. 65(d)(1)(B) ...........................................................................................12

**INTRODUCTION**

Defendants argue that neither vacatur nor a permanent injunction is appropriate should WABA prevail in this case. *See* Defs.' Suppl. Mem. Regarding Remedy, Dkt. No. 31 ("Suppl. Mem.").[1] Defendants fail to grapple with the fundamental and repeated nature of the legal shortcomings of their decision and are incorrect. No unusual circumstances justify an exception to the ordinary vacate-and-remand remedy under the Administrative Procedure Act ("APA"), and a permanent injunction is essential given Defendants' repeated efforts to press forward with their actions. In the absence of vacatur *and* an injunction, it is highly likely that Defendants will attempt to remove the bike lanes as soon as possible after April 23—rendering any decision in favor of WABA a hollow victory, even though Defendants have plainly failed to comply with multiple statutory obligations. The Court should require a meaningful remedy, not one that simply allows Defendants to issue yet another purported "new decision" and begin bike lane removal on April 24 or soon thereafter, rather than April 23.

**I.     This Court Should Not Depart from the Ordinary Remedy of Vacatur.**

"The ordinary practice is to vacate unlawful agency action." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019). By contrast, "the remand-without-vacatur remedy" is available only in "rare cases." *Id.* Courts may invoke that exceptional remedy after considering "(1) 'the seriousness of the [agency action]'s deficiencies (and thus the extent of doubt whether the agency chose correctly),' and (2) 'the disruptive consequences' of vacatur." *City of Port Isabel v. FERC*, 130 F.4th 1034, 1036 (D.C. Cir. 2025) (quoting *Allied-Signal, Inc. v.*

---

[1] At the April 9 hearing, the Court suggested that the parties might consider filing additional briefing regarding the appropriate remedy. However, at the hearing, Defendants presented oral argument on remedy and explained that they were "putting that in the record in lieu of an additional brief." 4/9/2026 Tr. at 70:6–7. Because Defendants have now, in fact, filed an additional brief, WABA submits this supplemental memorandum in response.

1

*U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993)).  Neither factor counsels in favor of a remand-only remedy here.

> **A.      The Deficiencies in Defendants' Decisionmaking are Serious and Not Vacating the Removal Project Would Have Disruptive Consequences.**

>> *1.      The Removal Project's Deficiencies Are Serious.*

The Project's shortcomings were so obvious and "serious," *Allied-Signal*, 988 F.2d at 150, that Defendants found it necessary to re-paper their decision by preparing new documents post-dating the beginning of this litigation.  As explained in WABA's briefing, those documents are post-hoc rationalizations.  *See* Pl.'s Combined Memo. in Supp. 15–20, Dkt. No. 24 ("WABA Reply").  And even on this second attempt to justify the Removal Project, Defendants fell far short of the basic requirement to engage in reasoned decisionmaking.  *See id.* at 22–37.[2]  As the Court put it at the April 9 hearing, Defendants have now "had two chances to explain" the Removal Project, including through a "fatter, thicker, more thorough reconsidered decision."  4/9/2026 Tr. at 60:7–9.  Defendants dismiss WABA's arguments as relying "heavily on failure-to-explain errors," Suppl. Mem. at 3, but the fact that Defendants' second bite at the apple also provided a woefully inadequate explanation indicates that the Removal Project does *not* suffer from "the type of deficiency most readily remedied on remand," *Am. Pub. Gas Ass'n v. DOE*, 22 F.4th 1018, 1031 (D.C. Cir. 2022); *cf.* Suppl. Mem. at 4 (noting that in *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032 (D.C. Cir. 2021), vacatur was appropriate because the errors were "unlikely to be remedied on remand, as [the] decision had been remanded once before").

---

[2] Both the National Park Service and the Federal Highway Administration committed those failures:  Both agencies are equally subject to the APA, NEPA, and the National Capital Planning Act.  Any suggestion that the Federal Highway Administration is free of error, *see* Suppl. Mem. at 1 n.1, is therefore incorrect.

Defendants do not address the substantial case law finding vacatur appropriate in similar circumstances. *See, e.g.*, *Powder River Basin Res. Council v. U.S. Dep't of the Interior*, No. 22-cv-2696, 2026 WL 555013, at *7–8 (D.D.C. Feb. 27, 2026) (vacating BLM leasing decision for failure to consider alternatives in its NEPA analysis); *Bhd. of Locomotive Eng'rs & Trainmen v. Fed. R.R. Admin.*, 972 F.3d 83, 117 (D.C. Cir. 2020) (vacating an agency action because "[t]here is no reason—not one word—in the administrative record for the [agency's] material and consequential decisionmaking on important matters of . . . safety" (citations and quotation marks omitted)).

In contrast, the remand-without-vacatur cases Defendants cite involved minor shortcomings. *See Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009) (agency failed to "explain why it chose one approach rather than another for one aspect of an otherwise permissible rule"); *Black Rock City LLC v. Haaland*, No. 19-cv-3729, 2022 WL 834070, at *9 (D.D.C. Mar. 21, 2022) (criticizing the agency for being unclear about its reasoning, but saying that the plaintiff's "objections to [the agency's] conclusions fail to persuade"). Defendants also cite a list of 29 remand-without-vacatur cases that was appended to a separate opinion by Judge Silberman. *See* Suppl. Mem. at 3 (citing *Checkosky v. SEC*, 23 F.3d 452, 466 (D.C. Cir. 1994) (opinion of Silberman, J.)). But just before providing that list, Judge Silberman recognized that courts vacate agency action "where the reviewing court determines that the agency's explanation for its action is so crippled as to be unlawful." *Checkosky*, 23 F.3d at 464. That is the case here.

Moreover, although Defendants have certainly committed plenty of failure-to-explain errors, WABA also made clear that the Removal Project "runs counter to the evidence before the agency," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

29, 43 (1983), because it is inconsistent with extensive safety evidence, *see* WABA Reply at 28–30; Fed. Highway Admin., *Proven Safety Countermeasures: Bicycle Lanes* (last visited Apr. 7, 2026), https://perma.cc/KH6L-FCJJ.  Defendants fail to explain how this Court can ascertain in advance whether consideration of the fundamental safety considerations that Defendants ignored—their prior detailed safety analysis that justified creation of the bike lanes in the first place, the consistent safety data generated by FHWA showing that bike lanes are an important safety measure supported by detailed studies and academic literature, or the expert declarations going to irreparable harm—would result in the same decision.

Defendants further downplay their missteps by arguing that WABA "points to no fundamental procedural deficiency," and therefore that vacatur is unwarranted under *City of Port Isabel*.  Suppl. Mem. at 4.  Defendants are incorrect.  In *City of Port Isabel*, a case about FERC's approval of two natural gas projects, the agency had "issued extensive final environmental impact statements reflecting more than three years of review and public comment," but had failed to fully comply with its NEPA obligations.  130 F.4th at 1036–37.  Even under those circumstances, the D.C. Circuit held that "the first *Allied-Signal* factor *favors* vacatur" notwithstanding that "the procedures" that FERC had "bypassed were not quite fundamental."  *Id.* at 1038 (citation modified) (emphasis added).  Here, Defendants' failures are far more dramatic:  They have undertaken at best an extraordinarily abbreviated NEPA process, and have fallen short of their obligations under the APA, National Capital Planning Act, and Park Service Organic Act.  *See* WABA Reply at 22–37; *Standing Rock*, 985 F.3d at 1052 (explaining "that because NEPA is a purely procedural statute, where an agency's NEPA review suffers from a significant deficiency, refusing to vacate the corresponding agency action would vitiate the statute" (citation modified)).  Indeed, the egregious means by which NPS attempts to avoid its Congressionally mandated

4

consultation requirement via the mere exchange of a staff-level, after-the-fact email, NPS-AR-001197, demonstrates these shortcomings.

        2.      *Greenlighting the Removal Project Would Have Disruptive Consequences.*

It is Defendants' favored remedy that would be disruptive, not the other way around. Vacatur would (at least until a "new decision" is made) maintain the status quo: bike lanes along 15th Street and the Tidal Basin. Remand without vacatur would presumably clear the way for the Government's imminent destruction of those bike lanes, and thus result in alteration of the status quo shortly after April 23 in a way that would take weeks or months to restore, assuming the Court has the power to restore the status quo at all. *See Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 62 F. Supp. 3d 1, 5 (D.D.C. 2014) (noting "a long line of cases in the courts of appeal holding . . . challenges to completed construction projects to be moot"); *see also* WABA Reply at 43. The ordinary remedy of vacatur is therefore appropriate. *See, e.g.*, *Pub. Emps. for Env't Resp. v. U.S. Fish & Wildlife Serv.*, 189 F. Supp. 3d 1, 4 (D.D.C. 2016) (declining to vacate without remanding in part because "environmental harm will result if the orders are <u>not</u> rescinded"); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 80 (D.D.C. 2010) ("[V]acatur is appropriate in order to prevent significant harm resulting from keeping the agency's decision in place."). Defendants, in their effort to distinguish *Conservation Law Foundation v. Ross*, 422 F. Supp. 3d 12 (D.D.C. 2019), *see* Suppl. Mem. at 6 n.3, fail to even mention the disruptive and irreparable injury risk plaintiff's members will face from the removal of protected bicycle lanes.

Defendants assert that vacatur would have disruptive consequences because if the bike lanes remain they "will impair" the "once-in-a-lifetime" America 250 celebrations. Suppl. Mem. at 5. This argument is as unsubstantiated as the parallel assertions in the administrative record, providing no detail about what that supposed impairment would look like, how the removal of the bike lane enhances traffic flows or safety, or why any of the myriad recent, large, successfully-

held events on the Mall and at the White House exhibited any kind of potential for impairment from the bike lanes.  Compare this case again with *City of Port Isabel*.  *See* Suppl. Mem. at 3–5. There, vacatur would have had disruptive consequences because it would "upend the schedule for [the] construction" of "complex, large-scale [liquefied natural gas] projects [that] ha[d] been in development for over eight years," would "undermine respondent-intervenors' ability to meet binding contractual commitments made in reliance on [FERC] orders," and could delay production of "liquefied natural gas equal to approximately 6% of current global demand."  130 F.4th at 1038. In contrast, here, no yearslong process would be interrupted—the record indicates that as late as January 2025, NPS had plans to spruce up, rather than demolish, the bike lanes.  *See* NPS-AR-000969–72.  Vacatur would simply retain the lanes as they have existed for years.

Neither *Allied-Signal* factor favors remanding without vacatur, and so the "ordinary practice" is appropriate.  *United Steel*, 925 F.3d at 1287.  And if the Court concludes that remand without vacatur *is* appropriate in order to allow Defendants to explain their actions, then the Court should at least enjoin Defendants from removing the bike lanes that are the subject of this litigation until Defendants have completed their new analysis.  *See WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 85 (D.D.C. 2019) (taking a similar approach); *Wilderness Soc'y v. U.S. Dep't of Interior*, 2024 WL 3443754, at *6 (D.D.C. July 16, 2024) (same), *appeal dismissed*, No. 24-5212, 2024 WL 4309257 (D.C. Cir. Sept. 26, 2024).

**B.      Defendants' Errors Cannot be Harmless Because They Affected the Outcome of Defendants' Decisionmaking.**

Defendants go so far as to suggest that the harmless-error rule should apply here, Suppl. Mem. at 2, by which Defendants would avoid not only vacatur, but also remand, *see Calcutt v. FDIC*, 598 U.S. 623, 629–30 (2023).  To the extent Defendants are suggesting that nothing could possibly change their minds, this simply underscores the nature of their post-hoc rationalizations,

6

and the necessity of both remand and vacatur to ensure that the agencies genuinely assess the relevant evidence. *See Food Mktg. Inst. v. ICC*, 587 F.2d 1285, 1290 (D.C. Cir. 1978) ("The agency's action on remand must be more than a barren exercise of supplying reasons to support a pre-ordained result. Post-hoc rationalizations by the agency on remand are no more permissible than are such arguments when raised by appellate counsel during judicial review.").

In any event, this rule applies only when, even after thorough reconsideration on remand, "there is not the slightest uncertainty as to the outcome of a proceeding." *Prohibition Juice Co. v. FDA*, 45 F.4th 8, 24 (D.C. Cir. 2022) (citation modified). So, for example, in *Prohibition Juice*, the FDA's failure to review certain e-cigarette marketing plans as part of a decision was harmless because those challenging the decision did "not claim that FDA's consideration of their marketing plans could have changed the agency's decision on their applications." *Id.* at 25. Here, had Defendants followed the proper process and reached a rational decision based on the evidence, it is not at all clear that they would have arrived at the same outcome. For example, if Defendants had consulted with the National Capital Planning Commission, then that entity's feedback may have altered Defendants' plans—the possibility of change is, after all, the entire point of Congress's requirement that agencies engage in such consultation.[3] And if Defendants had engaged in rational decisionmaking, they would have properly considered (at minimum) the related safety evidence, which cuts decisively against the Removal Project. *Cf. Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 185 (2025) (indicating that a court may "vacate the agency's ultimate approval of a project" if a more thorough NEPA analysis might lead the agency to "disapprove the project"). So, because the "outcome . . . on remand," *Prohibition Juice*,

---

[3] Defendants again insist that the Commission would ignore a consultation request. Suppl. Mem. at 2. But if this Court concludes that the law requires consultation, presumably the Commission would not flout that decision.

7

45 F.4th at 24 (citation modified), might well have been different, Defendants' shortcomings cannot have been harmless error. Indeed, the case on which Defendants rely for their harmless-error argument, Suppl. Mem. at 2, considered and then rejected application of the rule, *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004). This case should be no different.

## II.    A Permanent Injunction Is Necessary to Prevent Defendants from Attempting to Evade Judicial Review.

### A.    WABA Has Shown Irreparable Harm and a Permanent Injunction Is Warranted.

Defendants argue injunctive relief is unwarranted because WABA has not shown irreparable injury. They once again assert that increased safety-related risks do not qualify, *see* Suppl. Mem. at 6, and ignore that WABA members cannot simply avoid the physical risk, WABA Reply at 40–41, 43–44; *see also* Suppl. Decl. of William Schultheiss ¶¶ 15–16, 22, 30, Dkt. No. 23-1 ("2d Schultheiss Decl."). And they provide no basis for their assertion that "WABA's claims of irreparable aesthetic, recreational, and economic harm . . . are . . . unsupported." Suppl. Mem. at 6; *see also Washington v. Dep't of Transp.*, No. 25-cv-00848, 2026 WL 183584, at *24 (W.D. Wash. Jan. 23, 2026) ("[A]lthough Defendants have repeatedly attempted to categorically negate such harm as a matter of law, they have not factually rebutted any of it."). WABA has shown multiple types of irreparable injury, each of which would warrant injunctive relief on its own, and all of which collectively justify injunctive relief here.

First, WABA members will lose access to the safety and enjoyment of the bike lanes that run along the 15th Street corridor, cross the National Mall, and connect Washington, D.C. with Virginia. *See* WABA Reply at 38–39, 41–42 (detailing safety concerns and WABA members' use of the park for exercise and enjoyment of the attractive park landscape). This loss of access has serious safety consequences, described at length in WABA's previous briefing. *See id.* at 38, 40–41; *see also* 2d Schultheiss Decl. ¶¶ 13, 15–16, 22, 30. Those consequences cannot be sidestepped

8

by simply using sidewalks—mixing cyclists and pedestrians risks the safety of all. *See* 2d Schultheiss Decl. ¶¶ 15–16. The deprivation is also an aesthetic and recreational injury, because bike rides not taken are irreplaceable, and the bike lane closure will injure WABA "members' enjoyment of public land." *See Sierra Club v. Trump*, No. 19-cv-00892, 2019 WL 2715422, at *4 (N.D. Cal. June 28, 2019); *see also*, *e.g.*, *Am. Fed'n of Gov't Emps., AFL-CIO v. Off. of Pers. Mgmt.*, No. 25-cv-01780, 2025 WL 660053, at *13 (N.D. Cal. Feb. 28, 2025) ("The partial closure and degradation of national parks constitutes likely, irreparable harm due to both environmental injury and loss of access[.]"); *Ft. Funston Dog Walkers v. Babbitt*, 96 F. Supp. 2d 1021, 1039–40 (N.D. Cal. 2000) ("[E]very day the plaintiffs missed in the park constituted irreparable harm because no amount of money could compensate for the loss." (favorably discussing *Galusha v. N.Y. State Dep't of Env't Conservation*, 27 F. Supp. 2d 117, 122 (N.D.N.Y. 1998))); *Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, No. 25-cv-4316, 2026 WL 877779, at *14 (D.D.C. Mar. 31, 2026) (aesthetic injury "establishe[d] irreparable harm"), *remanded for clarification on other grounds*, No. 26-5101, 2026 WL 980554 (D.C. Cir. Apr. 11, 2026).

Second, many WABA members use the 15th Street bike lanes every day, and losing this crucial transportation avenue will negatively impact their quality of life. WABA Reply at 38–39, 40–41. This injury, too, is irreparable. *See Washington*, 2026 WL 183584, at *25 (holding that "impaired mobility [that] negatively impacts quality of life" and "burdensome trip planning, delayed travel, increased risk of being stranded, and foregone or altered desired trips" "constitute[] irreparable harm" (alterations and omissions in original accepted)). These bike lanes are the "missing link" that connects D.C. with Virginia and that agencies have worked to complete for the last decade. *See* WABA Reply at 43; 2d Schultheiss Decl. ¶ 22. WABA members cannot simply bike around a key artery that is missing.

Third, WABA members have shown irreparable economic harm caused by Defendants' unlawful actions because they have shown it would cost more to travel if they have to use other methods of transportation. *See* WABA Reply at 39, 42; *District of Columbia v. Dep't of Agric.*, 444 F. Supp. 3d 1, 34 (D.D.C. 2020) ("[E]conomic injury caused by federal agency action is unrecoverable because the APA's waiver of sovereign immunity does not extend to damages claims[.]").

Last, WABA members have demonstrated irreparable procedural harm caused by Defendants' failure to comply with their legal obligations. *See* WABA Reply at 42. Because WABA members have shown many other irreparable harms, the procedural error compounds the necessity for injunctive relief. *See Fund For Animals v. Clark*, 27 F. Supp. 2d 8, 14 (D.D.C. 1998).

WABA members have no meaningful way to avoid these harms. *See* WABA Reply at 43–44; 2d Schultheiss Decl. ¶¶ 15–16, 22, 30. The contention that WABA members can avoid harms by choosing a different route confirms they will, in fact, suffer those harms—pocketbook injury from more costly commuting methods, recreational and aesthetic harms from the loss of access to the park, or the sheer impractical nature of using an alternative route. *See* WABA Reply at 43–44; *see also Sierra Club v. Trump*, 2019 WL 2715422, at \*4 (holding that defendants' contention that plaintiffs' harms are insufficient because "members have plenty of other space to enjoy" was "unsupported by any case law" and "proves too much" (citing *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)); *see also Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, 2026 WL 533420, at \*5 n.2 (D.D.C. Feb. 26, 2026) (explaining "Defendants identify no authority for the proposition that an aesthetic injury must fully materialize before it may be cognizable"). NPS itself called the 15th Street bike lanes a "missing link" for years, NPS-AR-000784, NPS-AR-001227, and now cannot seriously suggest that it is avoidable.

WABA has shown that *only* injunctive relief can fully redress its harms in this case. Defendants have already once attempted to remove the bike lanes with no notice; without court intervention, WABA has no guarantee that they would not attempt to do so again.

### B.    An Injunction Would Have a Meaningful Practical Effect Independent of Vacatur.

An injunction is warranted here precisely because a "remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Defendants argue that a permanent injunction is not necessary because remand with vacatur would redress all WABA's injuries. *See* Suppl. Mem. at 7.

Here, a permanent injunction would "have a meaningful practical effect independent of . . . vacatur" by prohibiting Defendants from issuing a "new" decision and then immediately, without any public notice, executing the Removal Project. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010); *see O.A. v. Trump*, 404 F. Supp. 3d 109, 153–54 (D.D.C. 2019). Defendants state that "[i]f the Court decides to vacate NPS's decision to remove the Cycle Track, the vacatur would redress WABA's asserted injuries because NPS would need to make a new decision about the Cycle Track before starting any roadwork, and WABA could challenge that future decision under the APA." Suppl. Mem. at 7. Strikingly, Defendants say nothing about whether that "new decision" would be publicly available, or whether there would be any gap between such a decision and their physical removal of the bike lanes sufficient to allow for judicial review. Nothing in Defendants' briefing would prohibit them from issuing a "new" secret decision on April 24 and ripping out the bike lanes on April 25. In fact, Defendants may be poised to do just that. They have already placed temporary signs along the bike lane route, announcing "15TH ST PAVING ON/ABOUT 4/23/26." Declaration of Kristin Oakley ¶¶ 4–5, attached as Exhibit A. April 25 would still be "ON/ABOUT 4/23/26." A permanent injunction is thus crucial to ensure judicial

11

review is available.  That additional relief is necessary given Defendants' already demonstrated inclination to evade judicial review by manufacturing "new," purportedly independent decisions. *See Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 109 (D.D.C. 2025) (granting a permanent injunction in addition to vacatur because of "doubt that an order merely setting aside the [challenged action] would be effective").

### C.    WABA's Requested Relief Is Appropriately Tailored.

Defendants' contention that WABA seeks "a 'follow-the-law' injunction," Suppl. Mem. at 7, is misplaced.  WABA's requested relief was crafted to avoid concerns about overbreadth or vagueness.  Rather than seeking to subject Defendants to any substantive mandate, WABA seeks only tailored relief to prevent the government from circumventing judicial review.

WABA's proposed injunction "state[s] its terms specifically."  Fed. R. Civ. P. 65(d)(1)(B). WABA asks the Court to enjoin Defendants from moving forward with the Removal Project only until they "reach a new Decision after the issuance of this Order that removal of the 15th Street Bicycle Lanes is lawful and appropriate"; "provide a copy of the new Decision and the Administrative Record supporting that new Decision to the Court and to Plaintiff's counsel"; and "delay the effective date and implementation of the new Decision, and any plans to remove or materially alter the 15th Street Bicycle Lanes, for at least 45 days."  Dkt. No. 24-1 at 2–3.  WABA proposes specific restrictions only insofar as they allow for judicial review and eliminate the possibility of another secret decision being immediately implemented with no opportunity to be tested by judicial review.  Such a proposal does not put the Court in a "position of retaining supervisory jurisdiction" or allow WABA "to allege contempt *any* time they deem the agencies' process not to be 'appropriate.'"  Suppl. Mem. at 8 (emphasis added).  Nor does it create an undue risk that Defendants will be uncertain about how to comply with its provisions.  The proposed language, which the Court may of course alter, seeks a limited period for potential judicial review

12

so that Defendants may not proceed with secret unlawful action without *any* judicial review, rendering the removal of the bike lanes—and infliction of the myriad harms WABA has demonstrated—a *fait accompli*.

Indeed, in similar situations, courts have issued injunctions, retained jurisdiction over the matter, and required the agency to seek that the court dissolve the injunction on the basis of the agency's new decision on remand, ensuring that there is an opportunity for judicial review of that decision before any physical action is taken.

Consider *Sherwood v. Tenn. Valley Auth.*, No. 3:12-CV-156-TAV-HBG, 2017 WL 3261769 (E.D. Tenn. July 31, 2017), which explained that courts often "retain jurisdiction to review whether defendants have complied with necessary procedural requirements." *Id.* at *10. There, the court issued an injunction because of a failure of the agency to comply with NEPA and further provided that "[o]nce defendant issues a final decision it believes complies with NEPA, the Court will require defendant to file a request for dissolution of the injunction." *Id.* at *11. The court found that this "would not cause any unwarranted harm to defendant," and instead would "help to ensure defendant's compliance with NEPA." *Id.*

As another example, in *Anacostia Watershed Society v. Babbitt*, NPS had failed to adequately satisfy its NEPA obligations "by failing to undertake even the first and least burdensome step towards compliance, the preparation of an environmental assessment," when it transferred certain land to the District of Columbia for purposes of turning part of the property into a theme park. 871 F. Supp. 475, 477, 481–87 (D.D.C. 1994). The court ordered the agency to "immediately comply with [NEPA]" by "either prepar[ing] an environmental impact statement or an environmental assessment," and "retain[ed] jurisdiction over [the] matter to facilitate prompt judicial review" if Defendants failed to comply with the order and if a change in the status quo

13

was threatened before the Defendants had fully complied. *Id.* at 488.[4] Or consider *Ramirez v. U.S. & Customs Enforcement*, in which plaintiffs sued ICE in connection with its processing of eighteen-year-olds who came to the United States as unaccompanied undocumented children, and the Court found that ICE was liable under the APA for failing to follow procedures and refusing to take actions required by law. 568 F. Supp. 3d 10, 19 (D.D.C. 2021).

Other courts have imposed similar requirements in the context of agency failures to comply with procedural obligations. *See, e.g.*, *Nat'l Audubon Soc'y v. Butler*, 160 F. Supp. 2d 1180, 1191 (W.D. Wash. 2001) (issuing a permanent injunction and "retain[ing] jurisdiction to dissolve the injunction upon a showing that defendants have prepared an adequate" environmental impact statement); *Montana Wilderness Ass'n v. Fry*, 408 F. Supp. 2d 1032, 1038 (D. Mont. 2006) (similar); *Pub. Serv. Co. of Colorado v. Andrus*, 825 F. Supp. 1483, 1510 (D. Idaho 1993), modified, No. CIV. 91-0035-S-HLR, 1993 WL 388312 (D. Idaho Sept. 21, 1993) ("[T]he court shall exercise its discretion and retain jurisdiction over this case for the purpose of hearing and resolving any dispute between Idaho and DOE regarding the adequacy of the final EIS.").

As in those cases, this Court should exercise its authority to ensure Defendants cannot engage in removal of the bike lanes without an opportunity for judicial review of any "new" decision reached on remand.

---

[4] In *Anacostia Watershed Society*, the land transfer had already taken place, but the court relied on the Government's representation that "if the National Park Service determines, as a result of such environmental analysis, that the transfer of jurisdiction should be set aside, defendants will then take whatever steps are necessary, either in cooperation with the District of Columbia or with the aid of the Court, to restore National Park Service jurisdiction over the property." *Anacostia Watershed Soc'y v. Babbitt*, 875 F. Supp. 1, 2 (D.D.C. 1995). Here, Defendants have made no such representation that they will restore the bike lanes, and so it is doubly appropriate for the court to retain jurisdiction to ensure that Defendants comply with their legal obligations.

14

## CONCLUSION

For the reasons set forth herein and in WABA's previous briefs, vacatur and permanent injunctive relief remain appropriate and essential remedies.

April 18, 2026

Respectfully submitted,

By: _Thomas Brugato_

Thomas Brugato (D.C. Bar No. 1013523)
Gary S. Guzy (D.C. Bar No. 375977)
Daniel G. Randolph (D.C. Bar No. 230150)
Christina Coleburn (*pro hac vice*)
Kristin Oakley (*pro hac vice*)
Benjamin Rolsma (*pro hac vice*)

COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-5515
tbrugato@cov.com
gguzy@cov.com
drandolph@cov.com
ccoleburn@cov.com
koakley@cov.com
brolsma@cov.com

*Attorneys for Plaintiff Washington Area Bicyclist Association, Inc.*

15